### CARTER *v.* STATE OF INDIANA.

[No. 30,308. Filed February 4, 1963. Rehearing denied April 5, 1963.]

*William C. Erbecker,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Donald L. Adams,* Deputy Attorney General, for appellee.

ACHOR, J.—This is an appeal from a judgment in the Tippecanoe Circuit Court which denied appellant's petition for a writ of error coram nobis. In the original action appellant waived his right of counsel and entered a plea of guilty to a charge of robbery. The crux of petitioner's [appellant's] argument in the trial court and on appeal to this court is that he was denied due process of law, in that he was not adequately advised as to his constitutional right to be represented by counsel.

Factually, it cannot be disputed that the accused was, with great care, advised as to the crime with which he was charged, namely robbery; the penalty which the statute provided for such crime; that appellant was entitled to a public trial with or without a jury; to subpoena witnesses and to the services of an attorney at public expense, if he was without means with which to pay for the services of an attorney. After being so advised, he declined the services of an attorney and entered a plea of guilty to the charge.

However, it is appellant's contention that he was not adequately advised as to his right of counsel so that he could intelligently waive that right because he was not first informed regarding all matters which an attorney might assert to his advantage in defense of the charge, including such matters as other related charges for the same offense; other included offenses, and the penalties provided by law therefor; all possible defenses to such charges, and all other matters essential to a full understanding of the services which an attorney might perform in his behalf. In effect, appellant's conten-

tion is that no normally intelligent person can plead guilty to a criminal offense in the absence of counsel unless he is first given the same complete legal briefing on his case by the court as he would be given by counsel.

In support of his position, appellant relies upon the cases of *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Von Moltke* v. *Gillies* (1948), 332 U. S. 708, and *Moore* v. *Michigan* (1957), 355 U. S. 155. However, those cases are clearly distinguishable from the case before us on the facts presented.

In the *Batchelor* case, *supra*, the defendant was accused of murder, which involved the possibility of the death penalty. In that case the court at no time informed the accused as to the penalty authorized by statute. Also, while under continuous incarceration, the accused made repeated requests for counsel, which requests were denied, and when he appeared in court he was not asked if he wanted counsel, nor was he told that such counsel would be provided at public expense if he was without means with which to employ counsel. Whereas, in this case, appellant only once intimated that perhaps he should have an attorney, but this occurred while he was enroute from Minnesota to Indiana, at a time when no attorney was available. Appellant thereafter stated that he did not want the services of an attorney, although he was expressly told that counsel would be provided at public expense, if he was without means with which to employ counsel.

Appellant cites the case of *Von Moltke, supra,* as enunciating the law that, "To be valid such waiver [of constitutional right to counsel] must be made with an apprehension of the nature of the charges, the statuory offenses included within them, the range

of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."

However, it is to be noted that the language above quoted is that of the minority of the court only, and that the case was actually remanded for further evidence and finding relative to the appellant's contention "that she was [erroneously] advised by an F.B.I. agent, active in the case, that one who merely associated, however innocently, with persons who are parties to a criminal conspiracy was equally guilty," and that her refusal of counsel and plea of guilty was based upon such advice and, therefore, was not intelligently made. The above case does not sustain appellant's position in the instant case. Here there is no contention that appellant was given erroneous advice by anyone connected with the prosecution which prevented the appellant of intelligently waiving his right of counsel.

Appellant relies heavily upon the more recent case of *Moore* v. *Michigan, supra* [355 U. S. 155, 156, 160, 162], in which the U. S. Supreme Court, in a divided opinion, held [after weighing the evidence] that: "Notwithstanding the petitioner's express disavowal, before his plea, of a desire for counsel, the petitioner developed evidence at the hearing on the delayed motion which sustained his burden of showing that the disavowal was not intelligently and understandingly made and hence was not a waiver. . . ."

What was the evidence which was considered decisive in that case? As stated in the opinion: "Petitioner, a Negro with a seventh-grade education, was 17 years old at the time." He was charged "with the murder of an elderly white lady. He was sentenced to

solitary confinement at hard labor for life in Michigan's Jackson Prison." According to the evidence, before entering his plea of guilty, the trial judge asked the petitioner " 'whether he had a lawyer and whether he desired to have a lawyer, and that [the petitioner] gave a negative reply to both of these inquiries.' " Rather, the petitioner stated to the judge that " 'he wanted to get the matter over with . . . that he is guilty and that his one desire is to have it all over, to get to the institution to which he is to be committed, and to be under observation and to be examined. . . .' " The trial judge further testified: " 'He insists that there is something wrong with his head; that he has had something akin to queer sensations before this.' "

Under these circumstances, the U. S. Supreme Court considered that the record affirmatively disclosed the possible defense of insanity, which was obviously beyond his [petitioner-appellant's] capacity to understand. Furthermore, the court in the *Moore* case, *supra,* cites the fact that the appellant was arrested on the afternoon of October 26, 1938, a few hours after the murder was committed and, after prolonged questioning,[1] confessed to the crime and entered his plea of guilty under circumstances from which it could be concluded that the appellant was influenced to confess and plead guilty "and get it over with" in fear and "expectation of mob violence,

---

1. "Defendant was questioned on the night of his arrest until approximately 2 or 3 o'clock in the morning of the following day. On October 27, 1938, he was questioned from approximately 8 a.m. until 10 or 11 p.m. On October 28, 1938, he was questioned from approximately 8 a.m. until noon and again in the afternoon when he orally confessed. He was then taken before a municipal court justice where he waived examination and was bound over to the Circuit Court for trial." *Moore* v. *Michigan* (1957), 355 U. S. 155, 157.

planted by the Sheriff in the mind of this then 17-year-old Negro youth."

Finally the court considered the fact that under the Michigan law, upon a plea of guilty to a charge of murder [which carried a maximum penalty of solitary confinement at hard labor for life without possibility of parole], it became the duty of the court to hear evidence to determine the degree of murder and impose punishment commensurate to the degree of the crime, as determined. With respect to these proceedings, the court commented that they "introduced their own complexities [which, presumably, the petitioner did not comprehend]," regarding which, "[w]ith the aid of counsel, the petitioner, . . . might have done much to establish a lesser degree of the substantive crime, or to establish facts and make arguments which would have mitigated the sentence."

After giving consideration to the effect of all the circumstances, as above discussed, each and all of which bore upon the issue, the court concluded that the appellant Moore had not freely and intelligently waived his right of counsel prior to his plea of guilty.

The above cited case correctly points up the fact that in determining the question as to whether an accused intelligently waived his right of counsel the court must take into consideration (1) the age and intelligence of the accused; (2) possible patent defenses [such as insanity], which are made to appear but which the accused is without sufficient intellect to comprehend, (3) whether the waiver is made freely and voluntarily and without fear of violence, and (4) whether there are "complexities" in the proceedings itself, which indicate the need of counsel.

However, we find that none of the determinates in the above case are present in the case before us. The appellant in this case was not an uneducated youth with a fifth grade education, but a high school graduate, 23 years of age. The possibility of insanity was not a factor to be considered as presenting a complex issue which the appellant could not comprehend. Neither was there fear of mob violence, which may have induced appellant to refuse counsel and enter a plea of guilty. Nor does our statute or the offense of robbery, by its nature, require a proceeding to determine the degree of the offense, under which circumstances services of counsel might be required because of the "complexities" of the proceedings.

The trial court concluded that the appellant was adequately advised of the offense with which he was charged, and of his rights, with respect to the defense thereof, and that his waiver and refusal of counsel was freely and understandingly made. The evidence before us does not require a contrary conclusion. *Gates* v. *State* (1962), 243 Ind. 325, 183 N. E. 2d 601.

Judgment affirmed.

Arterburn, Landis and Myers, JJ., concur.

Jackson, C. J., concurs in the result.

NOTE.—Reported in 187 N. E. 2d 482.