Martin D. MUNGER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 3–1280A387.

Court of Appeals of Indiana,
Third District.

June 3, 1981.
Rehearing Denied July 14, 1981.

Harriette Bailey Conn, Public Defender (Robert H. Hendren, Sp. Asst. Public Defender, Indianapolis, for appellant (defendant below).

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

STATON, Judge.

Pursuant to a plea agreement, Martin D. Munger pleaded guilty to the charge of forgery.[1] The trial court accepted the plea and sentenced Munger to the Indiana Department of Correction for a period of eight years. After sentencing, Munger filed a petition for post-conviction relief. Munger appeals the denial of that petition.

On appeal, Munger contends the PCR court erred in denying relief on the following issues raised in his petition:

(1) Did the trial court fail to determine whether Munger was eligible for drug abuse treatment in lieu of imprisonment?

(2) Did the trial court fail to state the aggravating circumstances it purportedly found to justify the imposition of a sentence greater than the presumptive sentence?

(3) Was Munger's guilty plea rendered involuntary by the prosecutor's unwarranted threat to file an habitual offender charge?

We affirm.

## I.

### Drug Abuse

Munger contends the trial court should have informed him that he may have been

---

1. IC 1976, 35–43–5–2 (Burns Code Ed., 1979 Repl.).

eligible for drug abuse treatment under IC 1976, 16–13–6.1–18 (Burns Code Ed., 1980 Supp.), in lieu of serving an eight-year sentence. The statute on which Munger relies provides in pertinent part:

"(a) If a court has reason to believe that an individual convicted of an offense is a drug abuser or alcoholic or the individual states that he is a drug abuser or alcoholic and the court finds that he is eligible to make the request provided for under section 16[16–13–6.1–16] of this chapter, the court may advise him that he may be placed on probation if he requests to undergo treatment and is accepted for treatment by the department. In offering an individual an opportunity to request treatment, the court shall advise him of what may be required of him under IC 35–7–2–1 as conditions of probation. The court may certify an individual for treatment while on probation regardless of the failure of the individual to request treatment."

Munger directs this Court to information contained in the presentence report which he contends should have provided the trial court with "reason to believe" that Munger was a drug abuser who was eligible for treatment in lieu of imprisonment. Because the presentence report put the trial court on notice of Munger's involvement with drugs, Munger contends the trial court erred in failing to make "reasonable inquiry" into his eligibility for drug abuse treatment under IC 16–13–6.1–18. To support his contention, Munger cites *Glenn v. State* (1975), 163 Ind.App. 119, 322 N.E.2d 106, which construed IC 16–13–6.1–18's statutory predecessor, IC 1971, 16–13–7.5–18 (repealed 1974), as requiring the trial court to make reasonable inquiry into the defendant's eligibility for drug abuse treatment when the court has reason to believe the convicted defendant is a drug abuser or the defendant states he or she is a drug abuser.[2]

■■■ Munger's reliance upon IC 16–13–6.1–18 to support his contention that he should have been considered for drug abuse treatment in lieu of serving an eight-year sentence must fail. The trial court imposed an eight-year sentence upon Munger in accordance with a plea agreement submitted to the court by Munger and the prosecutor. The plea agreement provided:

"Comes now [the prosecutor], pursuant to I.C. 35–5–6–2, and respectfully notifies the Court that the State of Indiana will make the following recommendation on a plea of guilty by the above named defendant:

"That the defendant receive eight (8) years to serve on Cause CCR–78–98, and Counts I and II of Cause No. CCR–78–112 shall be dismissed at sentencing in CCR–78–98."

Finding the terms of the plea agreement acceptable, the trial court implemented its provisions, including its eight-year sentence recommendation. The trial court, once it accepted the sentence recommendation contained in the plea agreement, was precluded from imposing any sentence other than that required by the plea agreement. *State ex rel. Goldsmith v. Marion County Superior Court* (1981), Ind., 419 N.E.2d 109 at 114; *Moyer v. State* (1978), Ind.App., 379 N.E.2d 1036, 1038. In *Goldsmith*, the trial court granted the defendant's petitions for shock probation after plea agreements which contained specific terms of imprisonment had been accepted by the court. The Indiana Supreme Court mandated that the trial court's orders for shock probation be vacated. The Court observed:

"[The trial court] may not, however, alter the plea bargain for an executed sentence upon motion for consideration for shock probation by the defendant or upon [the trial court's] own motion . . . .

\* \* \* \* \* \*

2. This Court's construction of IC 16–13–6.1–18 and IC 16–13–7.5–18 (repealed) in *Glenn* was reaffirmed in *Reas v. State* (1975), 163 Ind.App. 316, 323 N.E.2d 274. The Indiana Supreme Court, addressing the issue of drug abuse treatment as an alternative to prosecution or impris-

onment, cited *Glenn* and *Reas* with apparent approval in *George v. State* (1980), Ind., 403 N.E.2d 339, 342; *see also, Scholl v. State* (1980), Ind.App., 404 N.E.2d 1154; *Sleck v. State* (1977), Ind.App., 369 N.E.2d 963.

"[A] plea bargain calling for an executed sentence forecloses *any probation* by the court, including shock probation." (emphasis added.)

*Goldsmith, supra,* at 114. The statute on which Munger relies, IC 16–13–6.1–18, requires a defendant-drug abuser to "be placed on probation" as a concomitant to undergoing drug abuse treatment. If the trial court in the present case had invoked the drug abuse treatment provision of IC 16–13–6.1–18 after accepting the plea agreement submitted by Munger and the prosecutor, the court would have had to place Munger on probation. However, under the holding of *Goldsmith,* the trial court's acceptance of the eight-year sentence recommendation precluded the court from placing Munger on *any probation.* The Supreme Court's all-encompassing prohibition against probation after acceptance of the sentencing terms of a plea agreement presumably includes the probation that must be ordered for the drug abuse treatment provision of IC 16–13–6.1–18. The Supreme Court stated clearly its mandate—there can be no alteration of a negotiated sentence once it has been accepted by the trial court. The Court explained its rationale for precluding probation after the trial court accepts a specific sentence recommendation as follows:

"The concept of plea bargaining contemplates an explicit agreement between the State and defendant which is binding upon both parties when accepted by the trial court. To allow the trial court to either increase or suspend the executed sentence, would deny the parties the essential purpose of their agreement. It is to the interest of both the defendant and the public to facilitate expeditious disposition of criminal cases. Strict adherence to the agreement is essential to this purpose.

*Goldsmith, supra,* at 114. Thus, any inquiry into Munger's eligibility for drug abuse treatment after the trial court accepted the plea agreement would have been a useless act. The trial court's acceptance of the negotiated sentence recommendation precluded the court from subsequently placing Munger on probation; thus, the drug abuse treatment provision of IC 16–13–6.1–18 was rendered inapplicable.[3]

▮ This Court's holding should not be construed as an emasculation of the drug abuse statutes and their rehabilitative goals when a defendant confesses guilt pursuant to a plea agreement. On the contrary, the drug abuse statutes remain a relevant concern for the trial court when a defendant and the prosecutor submit a plea agreement for approval. The Supreme Court's holding in *Goldsmith* does not preclude a trial court, *before* deciding whether to reject or accept a tendered plea agreement, from invoking the drug abuse treatment provision of IC 1976, 16–13–6.1–17 (Burns Code Ed., 1980 Supp.), if the court has "reason to believe" the defendant is a drug abuser who is eligible for treatment.[4] IC 16–13–6.1–17 em-

---

3. As stated in *Goldsmith,* a plea agreement that contains a specific sentence recommendation may also contain a specific reservation for the trial court to invoke the shock probation statute after imposing the recommended sentence. The same reservation of rights may be made for the trial court to invoke IC 16–13–6.1–18 should the Court after accepting the plea agreement, find the defendant eligible for drug abuse treatment. The plea agreement in the present case did not contain a reservation of rights under IC 16–13–6.1–18.

4. IC 16–13–6.1–17 provides in pertinent part:
 "(a) If a court has reason to believe that an individual charged with a felony is a drug abuser or alcoholic or the individual states that he is a drug abuser or alcoholic and the court finds that he is eligible to make the request provided for in section 16[16–13–6.1–16] of this chapter, the court may advise him that the prosecution of the charge may be continued if he requests to undergo treatment and is accepted for treatment by the department. In offering an individual an opportunity to request treatment, the court shall advise him that:
 "(1) If he requests to undergo treatment and is accepted, he may be placed under the supervision of the department for a period not to exceed three [3] years;
 "(2) During treatment he may be confined in an institution or, at the discretion of the department, he may be released for treatment or supervised aftercare in the community;

powers the trial court to defer prosecution for the substantive offense while the defendant receives drug abuse treatment. When a plea agreement is submitted to the trial court for approval, acceptance of the agreement and its sentencing terms may be deferred until the court, should it order drug abuse treatment and the defendant consents to receiving treatment, examines the results of the treatment. However, this procedure must be invoked *before* the trial court accepts the tendered plea agreement. Thus, drug abuse treatment remains as a sentencing alternative even when a plea agreement has been submitted to the trial court for approval.

█ In the present case, Munger does not allege that the trial court failed to comply with IC 16–13–6.1–17. Munger neither cites nor relies upon that statute in arguing this issue on appeal. The sole basis for Munger's argument on appeal is that the trial court failed to comply with IC 16–13–6.1–18. As stated before, IC 16–13–6.1–18 involves ordering drug abuse treatment *after* conviction. Munger was convicted of forgery when the trial court accepted his guilty plea and the attendant plea agreement. Thus, any reliance upon IC 16–13–6.1–18 in arguing that the trial court erred in failing to inform Munger of the availability of drug abuse treatment after his conviction is misplaced. The Supreme Court's recent directives in *Goldsmith* clearly pre-

clude IC 16–13–6.1–18 from becoming operative after the trial court accepts the sentence recommendation of a plea agreement.[5]

## II.

### Sentencing

Munger contends the trial court failed to follow the procedural requirements of IC 1976, 35–50–1A–3 (Burns Code Ed., 1979 Repl.), [Ind.Code Ann. 35–4.1–4–3 (West 1978)], which provides:

"Before sentencing a person for a felony the court must conduct a hearing to consider the facts and circumstances relevant to sentencing. The person is entitled to subpoena and call witnesses and otherwise to present information in his own behalf. The court shall make a record of the hearing, including:

"(1) A transcript of the hearing;

"(2) A copy of the presentence report; and

"(3) If the court finds aggravating circumstances or mitigating circumstances, a statement of the court's reasons for selecting the sentence that it imposes."

At Munger's sentencing hearing, the trial court imposed an eight-year sentence as required by the plea agreement which appears in section I. of this opinion. Munger challenges the trial court's failure to comply with part (3) of IC 35–50–1A–3 because the

---

"(3) If he completes treatment, the charge will be dismissed, but if he does not, prosecution on the charge may be resumed;

"(4) Such a request constitutes a formal waiver of the right to a speedy trial; and

"(5) To make such a request he must waive a jury trial and consent to a trial by the court or enter a guilty plea, with the general finding to be entered by the court to be deferred until such time as prosecution may be resumed."

5. It should also be noted that Munger was not "eligible to make the request [for drug abuse treatment] provided for under [IC 1976, 16–13–6.1–16 (Burns Code Ed., 1980 Supp.)]" as required by IC 16–13–6.1–17(a) and IC 16–13–6.-1–18(a). Part (4) of IC 16–13–6.1–16 precludes a defendant-drug abuser from requesting drug abuse treatment if "[o]ther criminal proceedings, not arising out of the same incident, alleging commission of a felony are pending against

the defendant." When the trial court reviewed Munger's presentence report, another criminal proceeding alleging the commission of two counts of forgery, both Class C felonies, was pending against Munger in the Allen Circuit Court, Cause No. CCR 78–112. While the plea agreement negotiated by Munger and the prosecutor required the dismissal of the forgery charges in CCR 78–112, the charges were not to be dismissed until Munger had been sentenced for the present forgery charge. The trial court, even if it had reason to believe Munger was a drug abuser, could not have ordered drug abuse treatment for Munger because the pending charges in CCR 78–112 rendered Munger ineligible to make a request for treatment under IC 16–13–6.1–16. *Trabue v. State* (1975), 164 Ind.App. 409, 412, 328 N.E.2d 743, 744.

court did not articulate the aggravating circumstances it purportedly found to justify the imposition of a sentence greater than the presumptive sentence prescribed for a forgery conviction. As a Class C felony, forgery carries a presumptive sentence of five years, with no more than three years added for aggravating circumstances. IC 1976, 35–50–2–6 (Burns Code Ed., 1979 Repl.). Munger received the maximum term of imprisonment permitted for a Class C felony.

Munger's challenge to the sentencing procedure used by the trial court requires an analysis of the objectives of IC 35–50–1A–3. The trial court, under IC 35–50–1A–3, must conduct a sentencing hearing in all felony cases so it may "consider the facts and circumstances relevant to sentencing." When the trial court imposes a sentence greater than the presumptive sentence, part (3) of IC 35–50–1A–3 requires the trial court to state on the record its reason(s) for selecting the enhanced sentence. *Hardin v. State* (1980), Ind., 404 N.E.2d 1354, 1359; *Gardner v. State* (1979), Ind., 388 N.E.2d 513, 517. The statement of reasons usually consists of a recitation of one or more of the aggravating circumstances enumerated in IC 1976, 35–50–1A–7(c) (Burns Code Ed., 1979 Repl.), [Ind.Code Ann. 35–4.1–4–7(c) (West 1978)]. The Supreme Court has articulated the underlying objectives of part (3) of IC 35–50–1A–3 as follows:

"Clearly, the purpose of these sentencing provisions in our criminal code is to insure a basic fairness in the sentencing process and thereby promote respect for the law. When the sentencing judge is required to make a statement of the reasons for imposing a particular sentence, two important goals are served. First, the judge is confined to proper grounds for either increasing or decreasing the presumptive sentence provided for the offense; and, second, the appellate court is enabled to determine the reasonableness of the sentence imposed, under the circumstances. *Page v. State*, (1980), Ind., 410 N.E.2d 1304.

"But a statement of reasons for imposing a particular sentence serves numerous other goals beyond the two primary goals. An attempt by the sentencing judge to articulate his reasons for a sentence in each case should in itself contribute significantly to the rationality and consistency of sentences. A statement by the sentencing judge explaining the reasons for commitment can help both the defendant and the public understand why a particular sentence was imposed. An acceptance of the sentence by the defendant without bitterness is an important ingredient in rehabilitation, and acceptance by the public will foster confidence in the criminal justice system."

*Abercrombie v. State* (1981), Ind., 417 N.E.2d 316, 319; *see also, Brewer v. State* (1981), Ind., 417 N.E.2d 889, 899–900; *Judy v. State* (1981), Ind., 416 N.E.2d 95, 107–08; *Dailey v. State* (1980), Ind., 406 N.E.2d 1172, 1176.[6]

 In the present case, the sentencing hearing required by IC 35–50–1A–3 was conducted for the purpose of implementing the sentencing provisions of a binding plea agreement. By accepting Munger's guilty plea and the terms of the plea agreement on which the plea was based, the trial court was prohibited from deviating from the sentencing provisions of the plea agreement. *State ex rel. Goldsmith v. Marion County Superior Court* (1981), Ind., 419 N.E.2d 109; *Moyer v. State* (1978), Ind. App., 379 N.E.2d 1036, 1038.[7] The trial

6. Other authorities and commentators have made observations similar to those of the Supreme Court. *See, People v. Watkins* (1980), Colo., 613 P.2d 633, 636–37; *State v. Anderson* (Me.1980), 409 A.2d 1290, 27 Crim.L.Rptr. 2496; Smithburn, "Sentencing in Indiana: Appellate Review of the Trial Court's Discretion," 12 *Val.L.Rev.* 219, 236–40 (1978); American Bar Association Standards Relating to Appel-

late Review of Sentences, § 20–2.3(c) and Commentary (2d ed. 1979).

7. In *Goldsmith* and *Moyer*, the courts relied on IC 1976, 35–5–6–2(b) (Burns Code Ed., 1979 Repl.), of the Indiana plea bargaining statutes in concluding that a plea agreement found acceptable by the trial court has a binding effect. IC 35–5–6–2(b) provides in pertinent part: "If the court accepts a recommendation it shall be

court, after finding the sentence recommendation negotiated by Munger and the prosecutor acceptable, predicated the imposition of an eight-year sentence solely on the existence of the plea agreement rather than any evidence of aggravating circumstances that may have been presented in the absence of a binding plea agreement. By pleading guilty pursuant to a plea agreement which contained a negotiated sentence recommendation, Munger knowingly, voluntarily, and intelligently recognized and admitted the enhanced sentence was fair and justified in light of the "bargain" struck between the prosecutor and himself. The prosecutor agreed to dismiss two unrelated forgery charges in exchange for Munger's consent to the imposition of an eight-year sentence for the present forgery charge.[8] Munger's expectations of the "bargain" were fulfilled completely. Thus, the only "fact and circumstance relevant to sentencing" was the existence of a binding plea agreement. The plea agreement became a sufficient reason in itself to justify the imposition of the enhanced sentence. A statement of aggravating circumstances was not required.[9] *Dolan v. State* (1981), Ind.App., 420 N.E.2d 1364 (# 3–880 A 242 handed down June 3, 1981).

The identical issue raised in the present case was addressed recently in *People v. Sutton* (1980), 113 Cal.App.3d 162, 169 Cal. Rptr. 656. The trial court imposed an enhanced sentence pursuant to a plea agreement, but it failed to make a statement of aggravating circumstances as required by a rule similar to IC 35–50–1A–3. In rejecting a request for relief based on the absence of a statement of aggravating circumstances, the appellant court stated:

"In this case, we hold that when a defendant enters into a plea bargain via a slow plea in which a condition of the bargain is the imposition of an upper term of imprisonment, the court, in stating its reasons for that sentence choice, need only give the bargain as its reason and need not give any other reason."

\*　　\*　　\*　　\*　　\*　　\*

"There was no reason to attempt to comply with Rule 439(c), which provides that if the judge select the upper term the reason shall be stated orally on the record and shall contain a concise statement of the ultimate facts which the court deemed to constitute circumstances in aggravation justifying the term selection."

169 Cal.Rptr. at 656–57. The court's resolution of the issue appears to be based on the view that the reasons for requiring the trial court to set forth aggravating circumstances do not obtain when the imposition of an enhanced sentence is preconditioned on the sentencing provisions of a binding plea agreement.

With Munger's consent to the imposition of an enhanced sentence as part of a binding plea agreement, the underlying objec-

---

bound by its terms." The term "recommendation," as it is used in IC 35–5–6–2(b), includes a proposal by the prosecutor as to the length of a sentence. IC 1976, 35–5–6–1(b)(2) (Burns Code Ed., 1979 Repl.). In *Goldsmith*, the Supreme Court characterized the trial court's acceptance of a specific sentence recommendation as a "foreclosure of judicial discretion." Ind., 419 N.E.2d 109 at 114. In effect, the acceptance of a specific sentence recommendation divests the trial court of any further sentencing discretion.

8. The two unrelated forgery charges in themselves could have been considered by the trial court as aggravating circumstances which would have justified the imposition of an enhanced sentence. *Griffin v. State* (1980), Ind., 402 N.E.2d 981; *Bell v. State* (1980), Ind.App., 407 N.E.2d 1206, 1208.

9. A statement of aggravating circumstances would be required if the plea agreement did not contain a sentence recommendation or the prosecutor's sentence recommendation was of the "nonbinding" type discussed in *Walker v. State* (1981), Ind.App., 420 N.E.2d 1374 (No. 3–880 A 254, handed down June 3, 1981.) Under such circumstances, the acceptance of a plea agreement is not predicated upon the trial court's imposition of a specific sentence. The trial court exercises full sentencing discretion in those circumstances, and it therefore must illuminate its exercise of discretion by stating the aggravating or mitigating circumstances it finds to justify the imposition of a sentence different from the presumptive sentence.

tives of part (3) of IC 35–50–1A–3 as articulated in *Abercrombie, supra*, were effectively satisfied. The trial court, once it accepted the plea agreement, restricted itself to imposing the recommended sentence. The sentence disposition of the plea agreement represented a concurrence of the opinions of the trial court, the prosecutor, and Munger as to a reasonable and rational punishment for Munger's crime. Munger's confession of guilt and consent to the duration of the sentence indicated his understanding of the reasons for the enhanced sentence and represented an important part in furthering the rehabilitative goals of the criminal justice system. Thus, the trial court's failure to state specific aggravating circumstances does not constitute error under the circumstances of the present case. The plea agreement itself provided a sufficient reason for the imposition of the enhanced sentence.

### III.

### Habitual Offender Charge

Munger contends his guilty plea was induced by the prosecutor's unwarranted threat to file an habitual offender charge. It is Munger's position that the threat was unwarranted because he did not have two prior felony convictions that could have served as foundational felonies under the habitual offender statute, IC 1976, 35–50–2–8 (Burns Code Ed., 1979 Repl.) (amended 1980). Munger therefore contends the prosecutor's unwarranted threat deceived him into pleading guilty, thus rendering his guilty plea involuntary.

█ Relying on *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, Indiana courts have given their judicial approval to the prosecutorial practice of threatening a criminal defendant with the filing of an habitual offender charge to induce a guilty plea to a substantive offense. *Holmes v. State* (1980), Ind., 398 N.E.2d 1279, 1280; *Howard v. State* (1978), 268 Ind. 589, 591, 377 N.E.2d 628, 629–30, *cert. denied*, 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708; *Davis v. State* (1981), Ind. App., 418 N.E.2d 256, 259. However, the prosecutor's discretion in making a "Bordenkircher threat" is not without limitation. In *Holmes, supra*, the Supreme Court limited the use of a "Bordenkircher threat" only to those situations where there is a "legitimate basis for the greater alternative." 398 N.E.2d at 1280. Michigan courts have limited the use of a "Bordenkircher threat" in a similar manner. *People v. Sanders* (1979), 91 Mich.App. 737, 283 N.W.2d 841; *People v. Johnson* (1978), 86 Mich.App. 77, 272 N.W.2d 200. In *Johnson*, the court stated:

> "Implicit in the proper use of a habitual offender charge as a plea bargaining tool is the legal applicability of the recidivist statutes to the particular defendant. The accused must be in fact a potential subject of habitual offender supplementation if this factor is to play a part in the plea negotiations. If the plea is induced by a promise to forego a recidivist proceeding, when no such proceeding would be warranted, the defendant is *per se* misinformed as to the benefit of his plea and the bargain is illusory. *See People v. Lawson*, 75 Mich.App. 726, 255 N.W.2d 748 (1977), *Hammond v. United States*, 528 F.3d [*sic*] 15 (C.A. 4, 1975)."

86 Mich.App. at 79, 272 N.W.2d at 201. The rationale for limiting the prosecutor's use of a "Bordenkircher threat" was stated eloquently in *Lassiter v. Turner* (4th Cir. 1970), 423 F.2d 897, well before *Bordenkircher* was decided. The court in *Lassiter* observed:

> "We do not attempt to define every instance in which a promise or inducement which effects a guilty plea is permissible or is proscribed. But we have no difficulty in concluding that a threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary. In such a circumstance, the representation takes on the character of a trick or an artifice inducing the plea, even though the prosecutor is also unaware of its forbidden character. In effect, the defendant is deceived into mak-

ing the plea, and the deception prevents his act from being a true act of volition." 423 F.2d at 900.

 In the present case, Munger's challenge to the prosecutor's purported misuse of a "Bordenkircher threat" cannot be sustained on any evidence in the record. There is no evidence that indicates the prosecutor threatened to file an habitual offender charge against Munger during plea negotiations. At the PCR hearing, Munger testified that he pleaded guilty to the forgery charge because *his attorney* had told him "they were gonna take and put me up with an habitual offender's act . . ." Munger failed to establish whether his attorney's statement was a matter of legal advice or the communication of a prosecutorial threat. Nowhere in the record does it reveal that the prosecutor actually threatened prosecution under the habitual offender statute, nor does it reveal that the prosecutor communicated the threat of filing an habitual offender charge to Munger's attorney. The record merely shows that Munger's attorney told him the prosecutor could file an habitual offender charge against him unless he pleaded guilty to the forgery charge. If the prosecutor had in fact made a "Bordenkircher threat," Munger has failed to prove that fact. Munger, as the petitioner in a PCR proceeding, bore the burden of proving his contention. *McGuire v. State* (1980), Ind., 414 N.E.2d 294. He failed to sustain his burden of proof.

Affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.