William E. PHILLIPS, Appellant,

v.

STATE of Indiana, Appellee.

No. 1182S413.

Supreme Court of Indiana.

Nov. 4, 1982.

Carr L. Darden, Acting Public Defender, Howard N. Bernstein, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

ON PETITION TO TRANSFER

PIVARNIK, Justice.

Defendant-Appellant William E. Phillips was charged in the Rush Circuit Court with forgery, Ind.Code § 35–43–5–2 (Burns 1979). On October 12, 1979, Phillips appeared *pro se* before the trial court and entered a plea of guilty pursuant to a plea agreement proffered by William B. Keaton, the prosecuting attorney. Said plea agreement provided that the State would recommend that Phillips be convicted as charged and sentenced to the maximum term of eight years and that the State would not pursue against Phillips an additional forgery or habitual criminal charge. The trial court accepted the plea agreement and convicted Phillips. Phillips did not appeal. On April 25, 1980, Phillips filed a *pro se* Petition for Post-Conviction Relief according to Ind.R.P.C. 1. In his Petition, Phillips alleged, *inter alia,* that the trial court prematurely accepted his guilty plea without properly determining whether or not he had knowingly and freely waived his constitutional right to counsel. Phillips also filed a

Verified Motion for Change of Venue From Judge and an Affidavit of Indigency. Special Judge John A. Westhafer was appointed to consider the Petition and a deputy public defender was appointed to represent Phillips. After conducting a hearing on February 5, 1981, the post-conviction court denied Phillips' Petition. Phillips subsequently appealed to the Fourth District Court of Appeals alleging:

(1) the trial court committed fundamental error by determining that Phillips had waived his right to counsel; and,

(2) the trial court erred by improperly sentencing Phillips to an eight year term without specifying its reason for imposing an aggravated sentence.

The Court of Appeals reversed the judgment of the post-conviction court upon finding the alleged fundamental error. We find the Fourth District Court of Appeals wrong in its judgment and accordingly vacate its opinion.

I

A post-conviction action under Ind.R.P.C. 1 is a special remedy whereby a party can present an error which, for various reasons, was not available or known at the time of the original trial or appeal. An Ind.R.P.C. 1 hearing is a quasi-civil hearing totally separate and distinct from the underlying criminal trial. *State ex rel. Sufana v. Lake Sup. Ct.,* (1978) 269 Ind. 466, 470, 381 N.E.2d 475, 477; *Lockhart v. State,* (1971) 257 Ind. 349, 357, 274 N.E.2d 523, 528. The burden of proof in such a proceeding is upon the petitioner who must prove his right to relief by a preponderance of the evidence. *Robinson v. State,* (1982) Ind., 437 N.E.2d 73, 74; *Herman v. State,* (1979) Ind., 395 N.E.2d 249, 252; *State ex rel. Sufana, supra; Lenoir v. State,* (1977) 267 Ind. 212, 213, 368 N.E.2d 1356, 1357; *Perkins v. State,* (1975) 263 Ind. 270, 271, 329 N.E.2d 572, 573. Notwithstanding Indiana's provision for post-conviction relief, the trial court nonetheless is the sole trier of fact and the sole judge of the weight of the evidence and of the credibility of the witnesses. Accordingly, the trial court's

judgment will not be disturbed in a post-conviction proceeding unless the evidence is without conflict and leads inescapably to a conclusion contrary to that reached by the trial court. *Robinson, supra; Herman, supra; Perkins, supra; Johnson v. State,* (1974) 262 Ind. 183, 186, 313 N.E.2d 542, 544, *reh. denied.*

The evidence before the instant post-conviction court revealed that Phillips appeared before the trial judge in the original criminal proceeding four different times and on each occasion stated that he understood his right to have counsel but desired to proceed *pro se.* Phillips' first appearance before the trial judge was for arraignment on October 3, 1979. At that time, the trial court explained to Phillips that the offense of forgery was a class C felony punishable by a fine of up to $10,000 and a prison term of five years which could be aggravated to eight or mitigated to two years. Phillips responded that he understood. Prosecutor Keaton then stated that since Phillips had been previously convicted of two felonies, the State would contemplate pursuing a habitual criminal charge against Phillips should he be convicted of the charged forgery. The trial court accordingly advised Phillips that if he were ultimately found to be a habitual criminal, he would receive an additional thirty years of incarceration. The trial court further advised Phillips that he either could plead guilty or not guilty to the forgery charge, and explained to him his respective rights. Phillips was specifically informed that should he plead not guilty, he would have the right to a speedy and public trial by jury, the right to see, hear and question all witnesses against him, the right to present evidence in his favor and the right to personally testify or to remain silent. The court also informed Phillips that he would have the right to order into court evidence or witnesses in his favor, the right to require the State to prove the charge against him beyond a reasonable doubt, and the right to have a qualified attorney defend him. Phillips stated to the trial court that he understood all of these rights and that he had no questions

about any of them. The court further explained that if he pleaded guilty, he would waive these rights and would stand convicted without a trial. Phillips stated that he understood this also. The trial court then stated to Phillips that should he be convicted, a sentence would not be imposed until after the probation department had conducted a pre-sentence investigation into his past employment, education, previous criminal record and other aspects of his background which might suggest the most appropriate sentence. Phillips again stated that he understood what the trial court was telling him. There subsequently was the following colloquy between the trial judge, Phillips and Prosecutor Keaton:

"Q. One of the rights mentioned to you is the right to have an attorney. Do you have an attorney?

A. No sir.

Q. Do you expect to get an attorney?

A. Well, I don't know sir. I mean, I'd like to talk it over with my wife, as I was telling Mr. Keaton I'd like to talk it over with my wife and tell her what Mr. Keaton said and then see, I mean....

Q. Do I understand there's been some discussion between you and Mr. Keaton this morning as to some possible agreement?

A. Yes sir, we've talked.

MR. KEATON: I've made an offer, Your Honor.

Q. You have made a plea offer to him?

MR. KEATON: Yes.

Q. All right. You understand, Mr. Phillips, that if you do decide that you want an attorney and cannot afford one, I would have to ask you some more questions, but if you want an attorney and can't afford one and I find that you can't afford one, one would be appointed for you. Do you understand that?

A. Yes sir.

Q. Okay. If I understand you correctly, what you're asking is you'd like to have another couple of days and would like to talk to your wife about what Mr. Keaton has talked to you about this morning before you reach any decision at all as to ....?

A. Yes sir, if that's possible.

Q. It certainly is...."

The arraignment hearing was thereupon continued until October 9, 1979, when Phillips again appeared before the trial court and stated that he desired additional time to talk with his wife. Accordingly, the trial court further continued the arraignment until October 12, 1979.

Phillips appeared before the trial court for the third time on October 12, 1979. The following colloquy then ensued between the trial judge and Phillips:

"Q. The matter was set for arraignment this morning and the State has now filed with me two documents, one entitled Motion to Enter A Plea of Guilty and another one entitled Recommendation, each of which purports to bear your signature. Did you sign those documents?

A. Yes sir.

Q. The Motion to Enter A Plea of Guilty indicates that the State has advised you basically the same thing that I did. Your various rights including your right to counsel and the Recommendation indicates that the ... that in the event you enter a plea of guilty and are found guilty, the State will recommend to the Court that you receive a sentence of eight years which would be executed, but the State would not file some other charges against you. Is that your understanding sir?

A. Yes sir.

Q. Now, we've had you in here twice, this is the third time and each time you made some mention of wanting to talk ... well, the first two times at least, with your wife and/or an attorney. According to what I know, at least, you have not talked with an attorney, is that correct?

A. Yes.

Q. Do you wish to talk with an attorney?

A. Well ... not now, I don't guess, no.

Q. Well, I just want to be sure that you understand that you have the right to

talk to an attorney. You have the right to make your own ... the decision to make your own deal with the State of Indiana as you have apparently done, but you also, by so doing, are in effect giving up your right to have and talk with an attorney and I want to be sure you understand that?

A. I understand that.

Q. You do understand that?

A. Yes sir.

Q. And you also understand, I hope and recall, that if you did want to talk to an attorney and couldn't afford one, the Court would appoint an attorney to represent you and you could still talk to an attorney, right?

A. Yes sir.

Q. And understanding this, is it still your desire to file the Motion to Enter A Plea of Guilty and to enter into this Recommendation with the State?

A. Yes sir.

Q. All right ...."

The trial judge subsequently read to Phillips the charging Information after noting that a copy of it was lying in front of Phillips for him to read. When the court asked Phillips if he had any questions about the Information or about the charged offense. Phillips answered: "No sir." The trial court then asked:

"Q. Are you prepared to enter your plea?

A. Yes sir.

Q. And your plea is?

A. Guilty.

Q. Mr. Phillips, the Probable Cause Affidavit ... I think you have a copy of it there also, indicates that this all occurred when you took some checks from a Bernard Schwinn of Burns Radiator Shop with whom you were apparently acquainted.

A. Right.

Q. And took some of his business checks and wrote one to ... payable to yourself, signed his name to it, and cashed it at Krogers. Is that what you did?

A. Yes sir.

Q. Sir, as I think maybe you're aware, that is forgery and the Court now finds you guilty as charged...."

The trial court subsequently referred this cause to the probation department for a pre-sentence investigation and report, and set sentencing for December 14, 1979.

On December 14, 1979, Phillips made his fourth appearance before the trial court as he appeared for sentencing. The following dialogue took place between the trial judge and Phillips at that time:

"Q. This is cause number CR79–42 captioned the *State v. William E. Phillips.* The record may indicate Mr. Phillips is present personally in open Court. Mr. Phillips, you appeared before me on October the 12th of this year, at which time after several inquiries, you again said you did not want an attorney?

A. I didn't say that Judge.

Q. I beg your pardon?

A. I did not say that. If I did, I misunderstood the question. I have a hearing defect, but I sure don't remember saying that.

Q. Well, let me read it to you, Mr. Phillips. Question. 'The Motion To Enter A Plea Of Guilty indicate (sic) the State has advised you basically the same things (sic) I did. Your various rights, including your right to counsel and the recommendation indicates that in the event you enter a plea of guilty and are found guilty, the State will recommend to the Court that you receive a sentence of eight years, which would be executed, but the State would not file some other charges against you. Is that your understanding, sir?'

Your answer. 'Yes sir.'

A. I remember that.

Q. Question. 'Now we've had you in here twice, this is the third time and each time you've made some mention of wanting to talk ... well the first two times at least, with your wife and/or an attorney. According to what I know, at least, you have not talked to an attorney. Is that correct?' Answer. 'Yes.' 'Do you wish to talk to an attorney?' Answer. 'Well, not now, I don't guess so, no.'

Question. 'Well, I just want to be sure that you understand that you have the right to talk to an attorney. You have the right to make your own . . . the decision to make your own deal with the State of Indiana as you apparently have done, but also by so doing, you are in effect giving up your right to have and talk to an attorney and I want to be sure you understand that?' Answer. 'I understand that.' Question. 'Do you understand that?' Answer. 'Yes sir.'

A. If I said it, I said it then. Maybe I just misunderstood the question.

Q. And going on, 'And do you also understand, I hope and recall, that if you do want to talk to an attorney and can't afford one, the Court would appoint an attorney to represent you and you could still talk to an attorney, right?' Answer. 'Yes sir.'

A. If I said it, I probably said it. I'm not arguing with you sir.

Q. 'And understanding this, is it still your desire to file a Motion To Enter A Plea Of Guilty and enter into this Recommendation with the State.' Answer. 'Yes sir.' After going through that, on that date you entered a plea of guilty to one count of forgery and were found guilty by me.

A. I'll accept that plea, I'll stay by it.

Q. Okay, that basically was my question to you when you said you hadn't been told of a right to . . . .

A. Okay, well I have a hearing . . .

Q. Beg pardon?

A. I have a hearing defect, sir, and I can't hear sometimes.

Q. Uh, huh. Well, you're hearing me all right now?

A. Yes, I can hear you as long as you speak up, yes sir.

Q. It is still your desire to maintain your agreement with the State and to accept the plea bargain that you entered into, is that correct?

A. Yes sir.

Q. And you say that even without having seen an attorney and knowing that you have a right to see one?

A. Yes sir.

Q. Okay. . . .

Q. Is there anything you would like to say before I impose the sentence in accordance with your agreement with the State?

A. No sir.

Q. Very well, . . . ."

■ Considering the ample evidence presented, we hold the post-conviction court justified in deciding that Phillips failed to prove that the trial court did not properly determine whether or not Phillips had knowingly and voluntarily waived his right to counsel. Specifically, we find that the trial judge fully informed Phillips of his right to be represented by an attorney and that counsel would be provided if necessary. We also find that Phillips unequivocally indicated that he understood the trial court's instruction but nonetheless desired to proceed *pro se.* Phillips did inform the trial judge that he had been educated only through the ninth grade and was hard of hearing. We do not find that either of these conditions contributed to Phillips' decision to proceed *pro se.* Further, Phillips has made no showing that he suffered from any patent mental or physical deficiency which would have required the trial court to find that he was incapable of understanding his right to counsel. *See: Carter v. State,* (1963) 243 Ind. 584, 187 N.E.2d 482, *reh. denied.* We find that Phillips freely admitted to the facts substantiating his forgery conviction. We understand that Phillips might have been concerned about being adjudged a habitual criminal having previously accrued at least two felony convictions. We do not believe, however, that such a predicament necessarily creates a coercive situation in the State's favor. Instead, we believe that Phillips' past criminal record provided the trial court in this case with sufficient evidence by which to find that Phillips reasonably acted when he accepted the plea bargain tendered to him. In review, Phillips' conditional agreement to plead guilty appears even more reasonable considering the fact that Phillips had been previously convicted of six different

felonies. Prosecutor Keaton testified before the post-conviction court that he offered the plea agreement to Phillips believing that Phillips had previously been only twice convicted. He further testified that had he then known of the six felonies indicated in Phillips' pre-sentence report, he would not have agreed to the plea bargain but would have proceeded to trial on the forgery charge and subsequently would have pursued a habitual criminal conviction. Having reviewed the entire record, we find sufficient evidence to justify the trial court in determining that Phillips knowingly and voluntarily waived his constitutional right to counsel. The evidence does not lead inescapably to a contrary conclusion, therefore Phillips' proceeding for Post-Conviction Relief fails according to this issue.

## II

■ Appellant Phillips also argues that the trial court erred by sentencing him to an aggravated term without specifying reasons for selecting the imposed sentence. Being a class C felony, forgery warrants a presumptive term of five years with no more than three years to be added for aggravating circumstances. Ind.Code § 35–50–2–6 (Burns 1979). The trial court sentenced Phillips to an aggravated, eight-year term as required by the plea agreement proffered to and accepted by the trial court. Phillips now argues in reliance upon Ind. Code § 35–4.1–4–3(3) [§ 35–50–1A–3(3) (Burns 1979)] which provides that a court must submit a statement explaining its sentencing rationale whenever it aggravates or mitigates a sentence from the presumptive term. Such a statement would have been required if there were no plea agreement in the instant case. Since a plea bargain was involved which expressly dictated the sentence to be imposed, the trial court was under no duty to explain its reasons for imposing the aggravated sentence.

■ A trial court may exercise its discretion to either accept or reject a plea agreement and sentence recommendation therein. If a court accepts such an agreement, however, that court is strictly bound by the sentencing provision of the agreement and is foreclosed from any further exercise of its sentencing discretion. *State ex rel. Goldsmith v. Marion County Superior Court,* (1981) Ind., 419 N.E.2d 109, 114; *Dolan v. State,* (1981) Ind.App., 420 N.E.2d 1364, 1369. When a trial court finds a recommended and agreed to sentence acceptable, that fact in and of itself justifies the imposition of an aggravated sentence. *Munger v. State,* (1981) Ind.App., 420 N.E.2d 1380, 1386, *reh. denied; Dolan,* 420 N.E.2d at 1370. Moreover, when a defendant pleads guilty pursuant to a negotiated plea agreement, he knowingly and voluntarily recognizes and admits that the sentence is manifestly fair according to the terms of the agreement. *Munger, supra.*

We find that the only circumstance relevant to the trial court's sentencing of Phillips was the plea agreement negotiated between Phillips and the State. That agreement, standing alone, justified the imposition of Phillips' enhanced sentence. Accordingly, we hold that the trial court committed no error by failing to state a reason for imposing upon Phillips an aggravated sentence besides clearly indicating in the record that the sentence was imposed pursuant to a binding plea agreement.

The State's Petition for Transfer is hereby granted, the opinion of the Fourth District Court of Appeals is vacated and the trial court is in all things affirmed.

GIVAN, C.J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The issue presented by appellant's petition for post-conviction relief is whether or not the record of the guilty plea proceeding demonstrated a constitutionally valid waiver of the right to counsel. In order to do so the record must disclose that the defendant was aware of the constitutional right to counsel and that he freely chose to relinquish or give up that right. *Hatcher v. State,* (1981) Ind., 414 N.E.2d 561. At the

heart of this matter is the special nature of the right to counsel. It is among the most fundamental and important constitutional guarantees serving to insure the fair trial of criminal cases, and courts have consistently demonstrated a perceptibly greater degree of diligence in insuring it. To illustrate this, Judge Miller for the Fourth District Court of Appeals quoted the following from *Faretta v. California,* (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562:

> "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits. *Johnson v. Zerbst,* 304 U.S. [458] at 464–465 [58 S.Ct. 1019 at 1022–1023, 82 L.Ed. 1461]. Cf. *Von Moltke v. Gillies,* 332 U.S. 708, 723–724 [68 S.Ct. 316, 323–324, 92 L.Ed. 309] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann,* 317 U.S. [269] at 279 [63 S.Ct. 236 at 241, 87 L.Ed. 268]." 422 U.S. at 835, 95 S.Ct. at 2541.

In the present case, it was recorded only that the trial judge accepting the plea of guilty stated that appellant had the right to an attorney and that he had a right to talk to an attorney. There is nothing in those flat, unembellished statements of the judge, or in the responses of appellant, that shows appellant was aware of any of the "traditional benefits associated with the right to counsel" or the "dangers and disadvantages" of serving as one's own lawyer. This record is simply barren of any rational basis upon which to infer that at the time appellant uttered his responses to the judge, he was aware of the significance of waiving the right to counsel. This being so, the evidence presented to the post-conviction court leads inescapably to the conclusion that appellant was entitled to withdraw his former plea of guilty.

I am therefore in accord with the opinion of the Fourth District that the judgment must be reversed and remanded for further proceedings.