**Terrance L. SMITH, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee.**

No. 49A02–9107–PC–293.

Court of Appeals of Indiana, Second District.

June 15, 1992.

Transfer Denied Aug. 17, 1992.

Susan K. Carpenter, Public Defender, Linda G. Nicholson, Deputy Public Defender, Indianapolis, for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Upon Petition for Post–Conviction relief, Terrance Smith sought to vacate his guilty plea convictions of Forgery, a Class C felony,[1] and Conspiracy to Commit Forgery, a Class C felony.[2] Smith appeals the denial of his petition. He argues that the trial court violated his due process rights when it denied his oral motion to withdraw the guilty pleas at the sentencing hearing, and

---

**1.** I.C. 35–41–5–2 (Burns Code Ed.1985).

**2.** I.C. 35–43–5–2 (Burns Code Ed.1985).

that said denial was violative of the equal protection clause of the Fourteenth Amendment.

We affirm.

Smith was charged by information with forgery and conspiracy to commit forgery. On December 14, 1989, Smith withdrew his preliminary pleas of not guilty and, pursuant to a plea agreement, pleaded guilty to each count. The court advised Smith of the rights he was relinquishing by pleading guilty, and a factual basis was established upon which to accept the pleas. The trial court found that the guilty pleas were knowingly and intelligently made and the pleas were accepted.

At the January 10, 1990 sentencing hearing, Smith orally moved to withdraw his guilty pleas. He claimed that he had entered the pleas "[b]ecause [he] was forced into it." Record at 243. Smith claimed at the sentencing hearing that his will was overcome by threats from the prosecutor that he would be charged as an habitual offender if he did not agree to the aforementioned plea arrangement. The record reflects that the State did indeed agree that, in return for Smith's guilty pleas, it would not charge him as an habitual offender. The trial court correctly advised Smith at the guilty plea hearing that the State was foregoing the filing of an habitual offender charge, which it was entitled to file.

██ Under Indiana law the state may indicate an intention to file an habitual charge as an inducement to plead guilty—provided, of course, that the defendant is eligible to be so charged. *Bordenkircher v. Hayes* (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604; *Munger v. State* (1981) 3d Dist.Ind.App., 420 N.E.2d 1380, 1387. Smith did not then argue, nor does he argue upon petition for post-conviction relief, that he was not in fact eligible to be charged as an habitual offender. The trial court denied the motion, noting that the transcript of the guilty plea hearing reflected that Smith was adequately advised of his rights, and that there was an adequate factual basis upon which to accept

the pleas. The trial court was not compelled to conclude otherwise.

Smith also makes an equal protection claim with respect to the refusal of the trial court to permit withdrawal of his guilty plea. He cites *Patton v. State* (1987) Ind., 517 N.E.2d 374, for the proposition that when a capital defendant protests his innocence before sentencing, the court is required to vacate a guilty plea. He then asserts that the same strict scrutiny of guilty pleas must be given to non-capital defendants, and that to do otherwise is to deny equal protection.

██ At the outset we note that Smith's motion to withdraw his plea was oral and not in writing. When a defendant fails to submit a motion to withdraw a guilty plea that is in writing and verified, the issue is waived. I.C. 35–35–1–4 (Burns Code Ed.1985); *Flowers v. State* (1988) Ind., 528 N.E.2d 57, 59. Smith argues in his reply brief that *Patton, supra,* 517 N.E.2d 374, stands for the opposite proposition—that the form of the motion, whether written or oral, is not controlling. Appellant's Reply Brief at 2. We note, however, that there was no discussion in *Patton* with respect to the requirement that a withdrawal of a guilty plea be in writing.

The mandate in *Flowers* that unwritten or unverified motions to withdraw guilty pleas made at a sentencing hearing waive any error in the denial of such motions is clear and unmistakable. *Flowers* was decided after *Patton*. Therefore, the conflict, if any, between the two decisions must be resolved in favor of *Flowers*.

There is an implication in Smith's argument, however, that in death penalty cases, as *Patton*, the procedural requirements are less rigorously applied than in non-capital cases such as *Flowers*. This implication forms the basis of his argument that denial of his motion to withdraw the guilty plea denied him equal protection.

In *Patton, supra*, factors were present which are not present in the instant case. *Patton* involved a death penalty possibility with respect to which our Supreme Court stated: "A trial court must exercise the greatest caution when accepting a guilty

plea in a capital case." 517 N.E.2d at 376. The Court also observed: "In Indiana we will not execute people who plead guilty and then protest innocence at their sentencing hearing." 517 N.E.2d at 376.

Subsequent to *Patton*, the Court decided *Trueblood v. State* (1992) Ind., 587 N.E.2d 105. In the latter case, the defendant received the death penalty following his guilty plea. In affirming the trial court's refusal to allow withdrawal of the plea, our Supreme Court discussed *Patton*, and its foundational authority, *Ross v. State* (1983) Ind., 456 N.E.2d 420. The Court held: "When a defendant moves to withdraw his guilty plea after its entry but before sentencing, the trial court's ruling on the motion is reviewable only for an abuse of discretion." 587 N.E.2d at 110. A major consideration in its seeming retreat from *Patton* was that

> "... the *Ross* principles might be used to permit a defendant to plead guilty to a capital offense and withdraw the guilty plea at any time. This approach could create havoc. A defendant could go to trial, wait until substantial time, energy and resources have been invested in the trial, and decide to plead guilty. Then if he changed his mind again he would be allowed to withdraw his guilty plea, go to trial, and possibly decide to plead guilty again. The potential for this sort of manipulation makes this approach unacceptable." 587 N.E.2d at 108.

It should be noted, however, that the reviewing court found overwhelming evidentiary support for Trueblood's guilty plea and that the crucial test as to reliability of the guilt determination had been met. In the *Patton* case, the indicia of guilt was less certain.

Although the *Trueblood* court countenanced a different standard to be applied in exploring guilty pleas in capital cases, as opposed to pleas which subject the defendant "only to a term of years," that subtle difference does not violate the equal protection clause. This is so because both the *Patton* approach and the *Trueblood* approach focus upon the reliability of the plea. As stated in *Trueblood:* "There can be no per se rule ... to evaluate the reliability of these determinations." 587 N.E.2d at 108. Analysis of *Patton* and *Trueblood* thus leads to the conclusion that some guilty pleas in capital cases should be vacated and withdrawal of others should be denied. The same result obtains in non-capital guilty plea cases.

The statute conferring discretion upon the trial court when considering motions to withdraw guilty pleas in non-capital cases obviously contemplates that such motions may be denied, as well as granted. This limitation upon a defendant's power to revoke a plea as a matter of right furthers the interests of judicial economy, and of finality in plea arrangements; both are legitimate state interests. In summary, the distinction does not reflect a lesser right conferred upon a non-capital defendant. There is no equal protection violation.

The judgment of the post-conviction court is affirmed.

RATLIFF, C.J., and SHIELDS, J., concur.