

ATTORNEY FOR APPELLANT

R. Thomas Lowe
Lowe Law Office
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyler Wayne Harris,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 17, 2020<br><br>Court of Appeals Case No.<br>20A-CR-732<br><br>Appeal from the Orange Circuit<br>Court<br><br>The Honorable Steven L. Owen,<br>Judge<br><br>Trial Court Cause Nos.<br>59C01-1901-F1-48 |

**Bradford, Chief Judge.**

# Case Summary

[1] Tyler Harris was charged with Level 1 felony neglect of a dependent resulting in death. At a pretrial hearing, Harris and the State entered into a plea agreement, under the terms of which Harris would plead guilty to Level 3 felony neglect of a dependent. The trial court accepted Harris's guilty plea, then indicated that it would wait for a pre-sentence investigation report ("PSI") to be prepared before accepting the plea agreement and sentencing Harris. After reviewing the PSI, the trial court rejected Harris's plea agreement. Harris's case went to trial, he was convicted, and he was sentenced to thirty years of incarceration. Harris contends that the trial court abused its discretion and was required to enforce the plea agreement after accepting his plea of guilty. Because we disagree, we affirm.

# Facts and Procedural History

[2] On December 3, 2018, Harris, Harris's wife, and two of their children visited the home of Preston Judd. During the visit, Harris smoked marijuana and used methamphetamine with Judd while the Judd and Harris children played in Judd's children's bedroom. Judd possessed liquid methadone, which he kept in a baby bottle stored in his bedroom closet. Harris was aware that methadone was in the home before the visit because he had discussed it with Judd previously. Sometime before the visit concluded, Judd retrieved the baby bottle containing methadone and brought it into the kitchen, placing it on a shelf. Shortly after the Harris family left Judd's home, C.H. fell asleep. When the

Harris family arrived home at 2:45 p.m., Harris's wife put C.H. in bed to sleep. Sometime after 5:00 p.m., after beginning to prepare dinner, Harris's wife went to retrieve C.H. for supper and started screaming when she found him unresponsive. Harris's wife called her stepfather, who lived nearby. When Harris's in-laws arrived, his father-in-law called 911. C.H. was taken to the hospital but passed away. Forensic examination revealed that C.H. had died from methadone toxicity. At trial, a forensic pathologist testified that a fatal dose of methadone for a child C.H.'s size would be approximately ten milligrams, or about one teaspoon of liquid methadone.

[3] On January 1, 2019, the State charged Harris with neglect of a dependent resulting in death, a Level 1 felony. On September 23, 2019, Harris agreed to plead guilty to Level 3 felony neglect of a dependent causing serious bodily injury. Pursuant to the terms of his plea agreement, Harris and the state agreed that he would receive a sentence of nine years, with eight years suspended. Also on September 23, 2019, the trial court advised Harris of his rights, found a factual basis existed for the plea, permitted Harris to withdraw his plea of not guilty, accepted his plea of guilty, and found him guilty of Level 3 felony neglect of a dependent causing serious bodily injury. When accepting the plea, the trial court stated, "the Court will accept your plea of guilty to neglect of a dependent causing serious bodily injury as a level three felony. However, I am going to withhold the sentence because it is a level three, and the nature of the case, until a pre-sentence investigation is done." App. Vol. II, 46. After reviewing the PSI, the trial court rejected the plea agreement on November 21,

2019, and set the case for trial. Following a jury trial, Harris was found guilty of Level 1 felony neglect of a dependent resulting in death and sentenced to thirty years of incarceration, all executed.

# Discussion and Decision

Harris contends that, because the court accepted his guilty plea on September 23, 2019, the court abused its discretion when it rejected his plea agreement on October 19, 2019, violating Indiana Code section 35-35-1-2. We disagree.

A plea agreement is "a contract, 'an explicit agreement between the State and defendant,' which, if accepted by the trial court, is binding upon all parties." *Bethea v. State*, 983 N.E.2d 1134, 1144 (Ind. 2013) (quoting *Griffin v. State*, 756 N.E.2d 572, 574 (Ind. Ct. App 2001)). However, "the defendant's acceptance of a proposed plea bargain does not create a constitutional right to have the plea bargain specifically enforced." *Coker v. State,* 499 N.E.2d 1135, 1138 (Ind. 1986). After all, trial courts may exercise their discretion to accept or reject plea agreements. *Reffett v. State,* 571 N.E.2d 1227, 1229 (Ind. 1991) (citing *Phillips v. State*, 441 N.E.2d 201 (Ind. 1982)). Once a court accepts a plea agreement, that court is "bound by all terms in the plea agreement which are within its legal power to control." *Id.* at 1230 (citing *Griffin v. State,* 461 N.E.2d 1123 (Ind. 1984)).

Harris contends that the law binds a trial court to accept a bargained for plea agreement if the court accepts a plea of guilty, arguing that to do otherwise

would deprive the defendant of the benefit of their bargain.  Ind. Code § 35-35-1-2 states:

> The court shall not accept a plea of guilty . . . without first determining that the defendant: has been informed that if: (A) there is a plea agreement . . . and the (B) the court accepts the plea; the court is bound by the terms of the plea agreement at the time of sentencing[.]

We do not interpret this statute to mean that once a court accepts a guilty plea that it automatically accepts the plea agreement.  Rather we read it to say that, before a court may accept a plea of guilty it must inform a defendant that, *if it accepts* a plea agreement, it will be bound by its terms.  Here, we have no such acceptance, so the trial court is not bound by the plea agreement which it intended to review on a later date.

[7]     The leading case on these issues is *Reffett*, in which the trial court's rescission of its initial acceptance of a plea agreement was overturned.  *Reffett*, 571 N.E.2d at 1230.  The *Reffett* trial court explicitly accepted both the guilty plea and the plea agreement, then found the defendant guilty.  *Reffett*, 571 N.E.2d at 1229.  At the sentencing hearing, the trial court rescinded its acceptance of the plea agreement in light of the PSI, which showed Reffett's lengthy criminal history. *Reffett*, 571 N.E.2d at 1228.  This case, however, is distinguishable from *Reffett* because, in accepting Harris's plea of guilty, the trial court specifically noted that it would not be accepting the entire plea agreement until after a review of the PSI.

[8] The trial court was acting with its discretion when it accepted Harris's guilty plea but explained that it would not be accepting the plea agreement until it reviewed the PSI. Under that plea agreement, which called for nine years of incarceration, with eight years suspended. If this plea agreement had been explicitly accepted when the guilty plea was given, the trial court would have had no discretion at sentencing. It is clear, however, that the trial court's motive was to review the PSI, and only then determine whether the sentence provided for in the plea agreement was acceptable. When the trial court did review the PSI, it determined that the plea agreement was unacceptable and allowed Harris to revoke his guilty plea before the court set a trial date. Harris failed to establish that the trial court abused its discretion in rejecting his plea agreement.

[9] The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.