**John D. WORTHINGTON,**
**Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3-678A136.**

Court of Appeals of Indiana,
Third District.

July 17, 1979.

James A. Greco, Greco, Gouveia, Miller & Pera, P. C., Gary, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Elmer Lloyd Whitmer, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

John Worthington was subpoenaed by the state to testify against his wife in her trial for second degree murder. On November 29, 1977, the second day of that trial, Worthington's counsel received a memorandum from the state analyzing the effect a grant of immunity would have on its ability to subsequently file charges against Worthington. The memorandum concluded by requesting the court to grant him immunity. Outside the presence of the jury, Worthington's counsel informed the court that if Worthington were to take the stand he would invoke the privilege against self-in-

crimination. He argued unsuccessfully against the grant and Worthington was ordered to testify.

Three days later, Worthington petitioned the court to reconsider, and after oral argument the petition was denied. The court immediately conducted a hearing to determine whether Worthington should be found in contempt for refusing to testify. His counsel informed the court that Worthington would refuse to obey the court's order to testify. The court explained to Worthington that in view of the immunity grant, a refusal would constitute contempt. Worthington responded that he understood, but on advice of counsel, would not testify. He was then found in contempt, but before sentencing the court offered him the opportunity to present evidence in mitigation. Worthington's counsel stated that his client's refusal to testify was not a reflection of disrespect for the court, but was undertaken solely to protect his privilege against self-incrimination. A memorandum written by Worthington stated substantially the same thing. He was sentenced to three months in the Porter County Jail and fined $500.

Worthington challenges the procedures used in granting him immunity and in finding him in contempt. Part of the challenge stems from discrepancies between the court's docket entries and the record itself. A docket entry states that on November 29, 1977 a hearing was held on the notice of immunity and motion to compel testimony filed by the state. However, another entry states that those two documents were not filed until November 30; indeed they and the memorandum are file stamped November 30. The state does not argue that any of these documents were filed before November 30, and we will assume that they were filed on the 30th. However, we note that Worthington does not assert that he received the memorandum after November 29.

Worthington first contends that before immunity could be conferred upon him, strict compliance with IC 35–6–3–1 was necessary. The state counters that substantial compliance was sufficient.

IC 35–6–3–1 provides:

"Compelling incriminating testimony—Immunity from prosecution—Exceptions. —Any witness, in any criminal proceeding, before a court or grand jury, who refuses to answer any question and/or produce any evidence of any kind on the ground that he may be incriminated thereby, may be ordered by the court to answer any question and/or produce any evidence upon a written request by the prosecuting attorney: Provided, That the witness shall be provided with timely notice and a separate hearing on the merits of the order. Unless the court finds that the issuance of the order would be clearly contrary to public interest, the witness shall comply with the order of the court. If, but for this section the witness would have been privileged to withhold the answer given or the evidence produced, he shall not be prosecuted or subjected to penalty or forfeiture for or on account of any answer given or evidence produced: Provided, further, That such immunity shall not be allowed in the case of any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order of the court."

Worthington urges that the notice he received was not timely and that the memorandum was not a request for immunity. His argument on notice appears to be that since that state had subpoenaed him a month and a half before trial and had known two months before issuing the subpoena that he might not testify, the notice he received the morning of the second day of trial was not timely. He does not claim to have been harmed and it does not appear that he was harmed. His attorney argued against the grant fully and did not ask for a continuance. He suggests nothing which additional time would have permitted him to raise in opposition to the state's request, nor did he suggest anything at either hearing.

■ IC 35–6–3–1 is not specific as to what constitutes timely notice, nor what form the state's request should take. It is difficult to see, therefore, with what the state is to strictly comply. The fact that the formal notice and request for immunity were filed after the hearing does not obviate the fact that the memorandum did request immunity and that Worthington was not harmed. Moreover, the fact that the state knew he might not testify some three months before trial cuts two ways: Worthington, as the only eye witness other than the defendant, knew that his testimony was of significant importance to the state. Being represented by counsel, the possibility of being compelled to testify would have been known to him. Thus, we cannot find that the trial court erred in granting immunity when the statute sets no specific requirements and when Worthington has shown no prejudice.

■ Worthington's next argument concerning the grant of immunity is that he was denied a hearing as required by the statute. He contends he was merely treated to a three-way "conversation" between the court and counsel. He urges that had there been a full hearing on the merits, the arguments which he brought out in the petition to reconsider would have been before the court before it granted immunity. This argument is without merit. He had a hearing on the state's request for immunity. The fact that the court granted him a hearing on his petition to reconsider accorded him additional process beyond the due process given by the first hearing. Moreover, the factors which he asserts could have been brought out at the first hearing either were brought out or were meritless.

■ Worthington's contention at both hearings was that the scope of the immunity granted was insufficient to protect him from any later prosecution and he claims this was required to protect his Fifth Amendment rights. However, it was established by the United States Supreme Court in *Kastigar v. United States* (1972), 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 that the Fifth Amendment requires only that the testimony elicited under a grant of immunity and any evidence derived from such testimony not be used in a subsequent prosecution. It does not bar subsequent prosecution. Nothing more is required by IC 35–6–3–1. This also disposes of Worthington's argument that because no charges had been brought against him at the time immunity was requested, immunity should not have been granted. He claimed that in the absence of charges there was no way of knowing what the state might do with his testimony in order to gather evidence to base a charge upon. *Kastigar* has resolved that issue as well; once immunity has been granted, the state has an affirmative burden to prove that evidence used in a subsequent prosecution is derived from a source wholly independent of the compelled testimony. While Worthington may dispute the sufficiency of this protection, no more is constitutionally required.

■ Similarly, Worthington's claim that the grant was improper because it did not protect him from prosecution should he perjure himself while testifying under the grant is inappropriate. One is not immunized from the consequences of perjury. IC 35–6–3–1; *see also* 10 *Uniform Laws Annotated,* Rules of Criminal Procedure § 732, p. 353 (1974).

■ Worthington's final assertion concerning what could have been presented at the first hearing (and which was presented) concerns the marital privilege. He urges that some of the testimony sought to be compelled would have been protected by the marital privilege. It is axiomatic that in a criminal trial, the privilege rests with the defendant, not with a witness. Moreover, even were Worthington's wife to assert the privilege, it would be irrelevant to consideration of immunity. The two privileges are unrelated. One protects the defendant; the other protects the witness.

■ Next Worthington argues that it was incumbent upon the court to make findings that compulsion of his testimony was not contrary to the public interest. The statute does not require findings to be made. It merely provides that unless the court finds that compulsion would be contrary to the public interest, it shall grant immunity.

The remainder of Worthington's argument is an attempt to challenge the contempt conviction on the basis of the provisions of IC 34–4–7–2 and 7 dealing with direct criminal contempts. We find these issues have been waived for none were specifically urged in Worthington's motion to correct errors. In addition, however, we point out that the court's contempt power is not strictly limited to the matters enumerated in the statute. It is a judicial power existing independent of statute. *Skolnick v. State* (1979), Ind.App., 388 N.E.2d 1156; *Mahoney v. State* (1904), 33 Ind.App. 655, 72 N.E. 151.

Affirmed.

HOFFMAN and STATON, JJ., concur.