STATE EX REL. STEPHEN GOLDSMITH, PROSECUTOR OF
MARION COUNTY, NINETEENTH JUDICIAL CIRCUIT
*v.* THE MARION COUNTY SUPERIOR COURT, CRIMINAL
DIVISION NO. 1, THE HONORABLE JAY B. HAGGERTY,
SPECIAL JUDGE.

[No. 1179S316. Filed March 31, 1981.]

546

*Stephen Goldsmith*, Prosecuting Attorney for the Nineteenth Judicial Circuit, *Bobby Jay Small*, Deputy Prosecuting Attorney, *Theodore L. Sendak*, Attorney General, *Michael G. Worden*, Deputy Attorney General, for relator.

*David F. McNamar, Michael R. Franceschini, Steers, Sullivan, McNamar & Rogers*, of Indianapolis, for respondent.

## CONTEMPT ACTION ARISING FROM AN ORIGINAL ACTION IN THE SUPREME COURT OF INDIANA

GIVAN, C.J.—This contempt action arose from a writ of mandamus issued to the respondent judge on November 15, 1979. Respondent was appointed special judge in two criminal cases, State of Indiana v. William J. Daugherty, Cause No. CR 70 116A and State of Indiana v. Ricky Lee Harris, Cause No. CR 79 93A. Both defendants entered guilty pleas

pursuant to plea bargain recommendations specifying executed sentences. Respondent accepted the plea bargain recommendations. However, he reduced each defendant's sentence. The writ of mandamus of November 15, 1979, ordered respondent to resentence the defendants according to the agreement or alternatively vacate the sentences and probations and set the causes for trial. Respondent followed the former course.

On December 6, 1979, and December 7, 1979, the defendants filed their respective petitions for consideration for shock probation. Respondent granted both defendants Harris and Daugherty's petitions on March 4, 1980. Thereafter, the relator filed an information and amended information in this Court alleging a violation of this Court's mandate of November 15, 1979.

On May 14, 1980, this Court held an evidentiary hearing for indirect criminal contempt. On May 22, 1980, this Court found respondent guilty of contempt for failing to carry out the mandate of November 15, 1979. Respondent was sentenced to thirty days imprisonment at the Indiana State Farm and fined $250. The Court further ordered that the sentence and fine be suspended if, before noon the following day, the respondent complied with the mandate. Respondent recalled both defendants, vacated their existing sentences and probations, set aside the judgments of conviction, rejected the plea bargain agreements, and set each cause for trial. Thereafter, respondent notified the Supreme Court of his actions.

This opinion is written in order that the Bench and Bar may be fully apprised of the circumstances surrounding this case.

Respondent first raises the question as to whether an appeal rather than an original action is the proper procedure to limit a judge to statutory sentencing provisions. He argues that once he complied with the writ of mandamus issued by this Court on November 15, 1979, by sentencing the defendants to executed terms, the case ended, and that the subsequent use of shock probation did not constitute a violation of the mandate. Respondents in *In re Lemond*, (1980) 274 Ind. 505, 413 N.E.2d 228, raised the same issue. In that case, we stated at p. 243:

"Respondents argue that, when Judge Richardson granted the writ of habeas corpus, these Court's orders were thereby fully complied with. A similar position was advanced in *State ex rel. Purcell v. Sullivan Circuit Court*, (1950) 228 Ind. 410, 92 N.E.2d 843. In that case, a circuit court judge entered an order which seemingly complied with a writ of prohibition issued by the Supreme Court. The facts behind the trial court's order, however, demonstrated that the order was merely a sham, designed to avoid the force and effect of the writ. In finding the circuit court judge in contempt the Supreme Court cautioned that '[t]his Court . . . is not blind,' and proceeded to look past the trial court's order to his actual behavior. *Id.* at 425, 92 N.E.2d at 849."

Respondent next claims it was improper for the Marion County Prosecutor to raise this question in the Supreme Court by information, since the rules concerning original actions contain no such provision. Notwithstanding the lack of procedural outline in the Rules of Procedure for Original Actions specifying the propriety of an information, this form has been utilized as a means of calling attention to the failure to comply with the orders of this Court. *In re Lemond, supra; In re Perrello*, (1973) 260 Ind. 26, 291 N.E.2d 698.

Respondent next asserts impropriety because the contempt citation arose from utilization of I.C. 35-4.1-4-18, the Shock Probation Act, while the basis for the writ of mandamus was I.C. 35-5-6-1, *et seq.*, the Plea Bargain Act. In *In re Lemond*, an appeal was taken from a trial decision regarding interstate child custody. The Court of Appeals, interpreting the Uniform Child Custody Jurisdiction Act, reversed the trial court. We denied respondent Lemond's petition to transfer the cause to this Court. The contempt citation was founded on respondent's attempted circumvention of the Court of Appeals' and the Supreme Court's orders by the filing and granting of CHINS (Children in Need of Service) petition pursuant to I.C. 31-6-4-3, *et seq.*, (Burns Supp. 1979) after having seemingly complied with the directives of this Court. Thus, notwithstanding the application of a different statute, a citation for contempt will issue when this Court's order is violated.

Respondent argues procedural flaws mistakenly relying on I.C. 34-4-7-1, *et seq.* However, I.C. 34-4-7-10 reads in relevant part:

"Section 10. The provisions of this act shall apply to all proceedings

for contempt in all courts of record in this state *except the Supreme Court* thereof . . . ." (emphasis added.)

Thus, by terms, the above act delineating procedure is inapplicable to the case at bar.

Respondent next claims that the Supreme Court erred in failing to appoint a Commissioner to hear the cause in accordance with I.C. 34-4-8-2, which reads as follows:

"34-4-8-2 [3-912]. Indirect—Supreme and Appellate Courts—Special commissioners—Procedure. In all cases of indirect contempt of the Supreme or Appellate Courts of this state, except those growing out of wilfully resisting, hindering, delaying or disobeying any lawful process or order of court, the court against which the alleged contempt has been committed shall . . . nominate three [3] competent and disinterested persons . . . to be submitted to the parties in the action . . . . The court shall thereupon appoint such person who shall remain unchallenged a special commissioner of such court. . . ."

We hold that the respondent's noncompliance with the mandate of November 15, 1979, falls within the exception of "growing out of wilfully resisting, hindering, delaying or disobeying any lawful process or order of court." Thus, there was no error in declining to appoint a Commissioner.

The applicable statute in this case is I.C. 33-2-1-4 which reads:

"33-2-1-4 [4-110]. Oaths—Fines for contempt.—Such court shall have full power to impose and administer all necessary oaths; to punish by fine and imprisonment for contempt of its authority and process; and to compel the attendance of witnesses by attachment and fine."

We further point out that courts of superior jurisdiction have inherent ability to punish contemptuous acts independent of statutory provisions. *Worthington v. State*, (1979) 181 Ind. App. 365, 391 N.E.2d 1164. The proceedings against respondent Haggerty flow from these powers.

Respondent claims that his intent to violate the Supreme Court mandate was not established. Intent and good faith are questions of fact to be decided by this Court after considering the evidence. *In re Lemond, supra; In re Perrello, supra.* Where a violation

of a court order is clear on the record, "it is not sufficient to merely deny any intention to defy the order." *In re Perrello, supra,* 260 Ind. at p.30, 291 N.E.2d at pp.700-701. This Court issued a writ of mandamus ordering respondent to sentence the defendants to executed terms of imprisonment or set the causes for trial. Subsequently, when the trial court granted shock probation, the order of this Court was thereby violated.

Respondent challenges the nonunanimous finding of contempt by drawing an analogy with the unanimity requirement in criminal jury verdicts. With three justices sitting in this contempt hearing, two found respondent guilty of contempt and one did not. I.C. 33-2.1-2-1 provides that three justices shall constitute a quorum to conduct the business of this Court. In *State ex rel. Sedam v. Ripley Circuit Court,* (1973) 262 Ind. 25, 302 N.E.2d 761, this Court in a nonunanimous opinion held a respondent trial judge in contempt.

Respondent also complains of Justice Prentice's participation in the voting in this action. Justice Prentice did not attend the hearing, but cast a fourth vote based on the briefs filed. Respondent has failed to establish any prejudice caused by Justice Prentice's participation. When votes on this Court are evenly split, the Court declines to take any affirmative action. (See Rule of Appellate Procedure 15 (F)) Thus, the participation of Justice Prentice as a fourth judge could only aid the respondent. The vote of the majority was not needed for affirmative action, where, on the other hand, had he cast a negative vote, the Court would have been split on a two-two vote which would have resulted in no action being taken. Thus, respondent could have only been aided, not harmed, by the participation of Justice Prentice.

Because the relator did not verify the information, respondent claims he was not given sufficient notice by the order to appear and show cause of May 14, 1980, to adequately warn him that he was being cited for contempt. Although the information is not verified by the relator, the information was attached to copies of all pleading and trial court entries certified by the clerk of the respondent court. In *In re Perrello, supra,* 260 Ind. at 31, 291 N.E.2d at 701, we stated:

"Respondent also contends the action is defective because the information was not verified by the oath of the informant. See *State ex Rel. Indianapolis Bar Assn., supra; Denny, supra.* However, attached to the information is a transcript of the sworn testimony which the informant made to Judge Boring of the Marion County Municipal Court concerning this matter, along with the Certificate of the Reporter and the Certificate of the Judge. This obtains substantially the same result, and we hold it to be sufficient to prevent nullifying the action."

Therefore, we hold that the information is not so defective as to defeat this action.

Respondent's claim of insufficient notice is likewise without merit. Paragraph 6 of the Information reads as follows:

"6. That the trial court, by granting 'shock' probation, violated the plea agreement entered into by the State and the Defendant, and violated this Court's order requiring the trial court to either impose the five (5) year executed sentence as recommended by the State in plea agreement or set the cause for trial."

This Court's Order to Appear and Show Cause reiterated the above allegations and further stated:

"This Court hereby ORDERS the said Special Judge Jay B. Haggerty to appear before this Court on the 22 day of May, 1980 at 1:30 P.M. to show justification for his granting of 'shock' probation, and whether granting of 'shock' probation is in compliance with this Court's mandate either to vacate the sentence imposed and impose the sentence recommended in the plea agreement, or, vacate the judgment and sentence and set the cause for trial, as expressly provided in said 'Writ of Mandamus.'"

A clear statement of the facts constituting the contemptuous action was furnished to the respondent.

Respondent questions whether or not the statutes concerning plea bargaining and the statutes concerning shock probation can be harmonized to give effect to both provisions in the same case, specifically whether a judge can grant shock probation after accepting a plea bargain. We believe not. We hold that the shock probation provision is inapplicable when a plea bargain is accepted by the trial judge, unless the plea bargain would contain a

specific reservation for the trial judge to invoke the shock probation statute.

I.C. 35-5-6-2(b) dictates compliance with a written plea bargain recommendation filed by the prosecutor pursuant to I.C. 35-5-6-1, *et seq.* if the trial court accepts the recommendation. Should the court reject the recommendation, the statute allows subsequent recommendations to be filed. If the recommendation is rejected by the trial court, its only course then is to set the matter for trial.

The concept of plea bargaining contemplates an explicit agreement between the State and defendant which is binding upon both parties when accepted by the trial court. To allow the trial court to either increase or suspend the executed sentence, would deny the parties the essential purpose of their agreement. It is to the interest of both the defendant and the public to facilitate expeditious disposition of criminal cases. Strict adherence to the agreement is essential to this purpose.

If the tendered recommendation calls for an executed sentence, the trial court may either accept or reject the recommendation. *Moyer v. State*, (1978) 177 Ind. App. 461, 379 N.E.2d 1036. He may not, however, alter the plea bargain for an executed sentence upon motion for consideration for shock probation by the defendant or upon his own motion. Of course, shock probation may be specifically provided for in the agreement itself; and, as such, both parties acknowledge the potential of a sentence reduction. Similarly, when the defendant pleads guilty to a lesser offense and no term is specified in the plea bargain recommendation, sentencing falls within the ambit of the trial court's discretion upon acceptance of the agreement.

The respondent argues that our decision in this case impinges on an early release occasioned by parole for "good time" as provided by I.C. 35-50-6-1, *et seq.* We do not agree. The foreclosure of judicial discretion in suspending an executed sentence provided for in an accepted plea bargain has no affect on the statutory discretion which is within the purview of the Parole Board or the Department of Corrections.

Respondent likens the trial court's discretion in revocation of probation to the discretionary grant of shock probation. We do not accept the analogy. In the former case, the defendant, granted probation through a plea bargain agreement, must understand that he is to abide by the terms of probation or suffer revocation. On the other hand, a plea bargain calling for an executed sentence forecloses any probation by the court, including shock probation.

Fortunately, this Court is rarely required to resort to contempt proceedings; however, recent cases cited in this opinion lead us to caution the Bench and Bar that violations of orders of the Supreme Court or the Court of Appeals constitute criminal contempt. These courts are not blind to subterfuge and manipulation intended to circumvent their orders. The light penalties imposed in recent cases should not be taken as precedent for the future.

We now reaffirm our finding of guilty of contempt heretofore issued in this case.

Givan, C.J., Pivarnik and Prentice, JJ., concur.

DeBruler, J., dissents with opinion.

Hunter, J., concurs in dissent.

## DISSENTING OPINION

DeBruler, J.—Prior to the contempt hearing we construed the plea agreement in which the prosecution recommended an executed sentence of six years to preclude authority of the judge approving it to initially suspend the sentence. At the contempt hearing this Court again construed the plea agreement to preclude authority of the judge to suspend the sentence pursuant to Ind. Code § 35-4.1-4-18, the Shock Probation Act, after having ordered the six year sentence executed. With the first conclusion, I have agreed. With the latter, I do not.

An executed sentence is a sentence which a judge has not postponed by suspension, but has ordered execution. On November 30, 1979, Judge Haggerty, in response to our writ ordered the six year sentences executed. In consequence of the actual imposition of these sentences

the defendants were delivered up to a state penal institution and commenced service of their six year sentences. Nothing could be clearer than that at this point the plea agreement and our order were fully obeyed and fulfilled. Three months after the defendants commenced service of their sentences, Judge Haggerty granted them shock probation. There was nothing in the law, the plea agreement, or the order of this Court which withdrew authority to take that step from Judge Haggerty. According to the statement of the prosecuting attorney in oral argument to us, that authority was not contemplated by the contracting parties in making their agreement. That authority was also not contemplated by this Court in making its order.

The case of *In Re Lemond*, (1980) 274 Ind. 505, 413 N.E.2d 228, is different. In that case at the point in time when the appellate court order was to be fulfilled by delivering the child into the physical custody of its mother in the court room as previously arranged, the judge used jurisdiction stemming from a separate statute to frustrate the final act. But most importantly, as expressly addressed in this Court's opinion, that jurisdiction did not arise in the court because procedures required by the statute governing it had not been complied with. There are no such factors present in the behavior of Judge Haggerty in this case.

In sum, the prosecuting attorney, like any party, like the accused, is bound by the express terms of his contracts. He is entitled to no special deference from courts permitting him to amend or alter the terms of his contracts to the State's advantage after they have been set and then approved by the trial court. The State bargained for and got an executed sentence. This Court ordered and got an executed sentence. Judge Haggerty enforced the agreement and complied fully with this Court's order, and he is therefore not guilty.

Hunter, J., concurs.

NOTE—Reported at 419 N.E.2d 109.