**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Nov 06 2014, 8:57 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**BRIAN J. JOHNSON**
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 32A04-1402-CR-72 |
| | ) | |
| ANTHONY RIVERA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Stephenie LeMay-Luken, Judge
Cause No. 32D05-1306-FD-653

**November 6, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SULLIVAN, Senior Judge**

The State of Indiana appeals from the trial court's order disposing of a petition alleging that Anthony Rivera violated the terms and conditions of his direct placement in community corrections. After finding that Rivera had committed a technical violation, the trial court sentenced him to time served as a consequence for that violation. The State contends that the trial court's sentencing decision is illegal because it, in effect, violated the terms of Rivera's fixed-sentence plea agreement. We affirm.

On September 25, 2013, Rivera entered into a plea agreement resolving charges filed against him under two separate cause numbers in Hendricks County. Rivera pleaded guilty to one count of conspiracy to commit theft, as a Class D felony, in exchange for the dismissal of the remaining charges. The trial court accepted the plea, which provided for, in pertinent part, a 545-day sentence in the Indiana Department of Correction at a work release facility, with credit for a total of 126 days served. The trial court sentenced Rivera according to the terms of the plea agreement, and on September 26, 2013, with credit applied against his sentence, Rivera was placed on work release to be served at the Hendricks County Work Release Center, a community corrections program, for 419 days.

During the intake process, Rivera was given a rules and regulations booklet, which Rivera signed to affirm his receipt thereof. The rules booklet provided that it was a violation of a commitment to a work release program, and classified as a Type A offense, to "[t]hreaten another with bodily harm or with any offense against the person or property." Tr. p. 37. Rivera experienced difficulty controlling his anger while on work release. When Rivera was given instructions he preferred not to follow, he became belligerent, and on several occasions, yelled and used profanity. Rivera's outbursts became more aggressive

2

with the passage of time, and he became increasingly more disrespectful of staff members and other residents.

In December 2013, a new case manager was assigned to the work release program and met with all residents, but met on a weekly basis with high risk residents such as Rivera. The initial meeting the new case manager had with Rivera ended when Rivera refused to discuss with her any difficulties he might be having with his family. Rivera's daughter had accused Rivera's brother of molesting her and the brother was convicted for that offense. Rivera believed that his family members were attempting to make him feel guilty about the fact that the matter was resolved through the legal system instead of being resolved within the family and were ostracizing him. Rivera did not want to discuss this matter with the case manager.

Rivera, who was very agitated as he left the meeting, told a work release officer with whom he regularly communicated that the new case manager "really pisses me off and she might get hurt; it makes me feel like a blood thirsty criminal." Appellant's App. at 49. Rivera did not look like he was joking at the time he made those remarks. The work release officer attempted to explain to Rivera why his comments were inappropriate and also attempted to redirect and de-escalate Rivera's behavior. As the work release officer escorted Rivera to jail, the two saw the new case manager. Rivera told her that he did not agree with what she had done, and the officer quickly restrained Rivera after he started walking toward her. Rivera was found to no longer be viable for the work release program, and a petition setting forth the violation was filed against him.

At the hearing on the petition, the trial court agreed that Rivera was no longer a

good candidate for work release due to his aggressive comments and found a technical violation of the rules for work release. The trial court did so, although noting that Rivera's violation did not involve committing a new offense, escaping from his placement, or using illegal drugs during that placement. The trial court opined that since the original offense for which Rivera was convicted was relatively minor, his violation arose from the difficulties he was experiencing with his family, and because the Department of Correction was overburdened by the incarceration of many Class D felons, which was not the purpose of the DOC, Rivera should be sentenced to time served for the violation, 192 days plus 192 credit days, or a total of 384 days.

The State appeals the trial court's decision, characterizing the decision as an illegal commutation of Rivera's sentence, which was set forth in Rivera's plea agreement, and seeks to have Rivera serve the remaining 161[1] days at the Hendricks County Jail or in the Department of Correction. We pause here to note that it is the Governor who has been given the authority to grant commutations after convictions. See Ind. Const. art. 5, §17. Instead, the State's argument appears to be, in substance, that the trial court imposed an illegal sentence when it sentenced Rivera to time served for the violation of his direct placement in community corrections. We approach the State's argument from that perspective.

The abstract of judgment setting forth Rivera's original sentence shows that he was sentenced to 545 days in community corrections. The "additional comments" section states

---

[1] 161 days represents the difference between the 545 days as per the original sentence less the 384 days time served.

4

"Defendant sentenced to 545 at IDOC, credit for 63 + 63 days, 0 days suspended. Jail Time served at Work Release facility." Appellant's App. at 44. Indiana Code section 35-38-2.6-2 (1994) defines a community corrections program as a program "consisting of residential and work release, electronic monitoring, day treatment, or day reporting" that is operated at the local level.

With respect to the appropriate standard of review of the revocation of a placement in a community corrections program, "[t]his court has analyzed the relationship between community corrections programs and probation, determining the difference between the two to be insignificant." Pavey v. State, 710 N.E.2d 219, 220-21 (Ind. Ct. App. 1999). "[A] community corrections revocation hearing is civil in nature, and in order to revoke [a defendant's] placement, the State need only prove that the revocation was warranted by a preponderance of the evidence." Decker v. State, 704 N.E.2d 1101, 1104 (Ind. Ct. App. 1999). In Cox v. State, 706 N.E.2d 547, 549 (Ind. 1999), our Supreme Court stated as follows:

> For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. The similarities between the two dictate this approach. Both probation and community corrections programs serve as alternatives to commitment to the Department of Correction and both are made at the sole discretion of the trial court. A defendant is not entitled to serve a sentence in either probation or a community corrections program. Rather, placement in either is a "matter of grace" and a "conditional liberty that is a favor, not a right."

(internal citations and footnotes omitted). In a footnote, the Supreme Court additionally held that "appellate review procedures, due process requirements, and evidentiary rules for probation revocation and community corrections placement revocation hearings are the

5

same.  But there may be other matters related to community corrections and probation which the law will not treat in the same way."  Id. at n.6.

Indiana Code section 35-38-2.6-4 (1991) provides that "[i]f the court places a person in a community corrections program under this chapter, the court *shall* suspend the sentence for a fixed period to end not later than the date the suspended sentence expires." (emphasis added).  Further, Indiana Code section 35-38-2.6-5 (1991) provides as follows:

> If a person who is placed under this chapter violates the terms of the placement, the court *may*, after a hearing, do any of the following:
>
> (1) Change the terms of the placement.
> (2) Continue the placement.
> (3) Revoke the placement and commit the person to the department of correction for the remainder of the person's sentence.

(emphasis added).

The State argues that the trial court's sentencing options were limited to the three spelled out by this statute.  The State further contends that what the trial court did was revoke Rivera's placement under subsection (3), and by doing so, the trial court was required to impose the remainder of Rivera's sentence, 161 days, which was fixed under the terms of the plea agreement, to be served at the Hendricks County Jail or at the Department of Correction.  The State reasons that when the trial court failed to do so and exercised its discretion by imposing a sentence of time served as a consequence for the technical violation, it imposed an illegal sentence because it disregarded one of the binding terms of the plea agreement.  For reasons we explain below, we disagree with the State.

The language of the statute pertaining to the violation of a community corrections placement explicitly provides that after a violation has been found, the trial court "may"

6

do any of the three options after a hearing. In Stephens v. State, 818 N.E.2d 936, 941 (Ind. 2004), a case involving review of the revocation of probation, the Supreme Court disapproved of a reading of the statute such that it allowed the trial court flexibility in sentencing only if the trial court kept the defendant on probation. The Supreme Court noted that such an interpretation would render a trial court without flexibility in sentencing if the trial court revoked the defendant's probation. Id. While interpreting the statute, the Supreme Court focused on the use of permissive, not mandatory, statutory language, specifically the word "may". Id. at 941. The Supreme Court concluded that "the statutory scheme seems to us to be sufficiently flexible to permit a trial court to order the same amount of executed time following a probation violation whether or not it actually revokes probation." Id. at 942. While the Stephens case involved a probation revocation, we find no rational distinction between the issue presented in Stephens and the one presented here and follow the rationale set forth in Stephens.

"A plea agreement is contractual in nature, binding the defendant, the State, and the trial court." Abernathy v. State, 852 N.E.2d 1016, 1019 (Ind. Ct. App. 2006). "The trial court is given the discretion to accept or reject a plea agreement, and, if it accepts the agreement, it is strictly bound thereby." Id. "Furthermore, upon acceptance of such an agreement, the trial court is precluded from imposing any sentence other than that required by the plea agreement." Id. Here, the trial court's initial sentencing order comported with the fixed sentence provided for in the plea agreement in all respects. The trial court did not disregard the sentencing provision of the plea agreement after accepting the plea.

That said, the plea agreement provided that Rivera's 545-day sentence would be

7

served at "IDOC/Work Release." Appellant's App. at 42. A "placement in a community corrections program is not a commitment to the Department of Correction." Ind. Code § 35-38-2.6-3(a) (2006); Million v. State, 646 N.E.2d 998, 1000 (Ind. Ct. App. 1995). In Pannarale v. State, 638 N.E.2d 1247, 1248 (Ind. 1994), the issue presented involved the trial court's authority, if any, to subsequently reduce a sentence at the defendant's request after a plea agreement had been accepted and a sentence pursuant to that agreement had been imposed. Because the plea agreement in Pannarale involved the imposition of a sentence not to exceed ten years, the trial court retained "a considerable amount of discretion in determining the specific number of years to be imposed." Id. Under the authority of that retained discretion, the trial court could modify the defendant's sentence to less than the upper limit of the sentence provided in the plea agreement, even in the absence of an explicit reservation of authority in the plea agreement.

In Pannarale, the Supreme Court noted that "[w]hile the trial court may not impose a sentence greater or lesser than that contained in the plea agreement, it does not lose any discretion it possessed at the time of initial sentencing when subsequent petitions for modification are presented." Id. at 1248-49. The State contends that the trial court modified Rivera's sentence, which was fixed and did not impose a cap. Citing Pannarale and State ex rel. Goldsmith v. Superior Court, 275 Ind. 545, 551-53, 419 N.E.2d 109, 114 (Ind. 1981), the State argues that (1) the trial court did not have a reservation of authority to modify the sentence per the plea agreement, and (2) the modified sentence would have violated the plea agreement had it been originally imposed.

Pannarale involved a petition to modify a sentence after the trial court imposed a

8

sentence allowed by the terms of the plea agreement. In State ex rel. Goldsmith, the trial court accepted a plea agreement recommending particular executed sentences, but then imposed reduced sentences in the first place. Here, the trial court was required to impose the sentence it did, which also contained a provision regarding Rivera's placement. Therefore, by the explicit terms of the plea agreement, the parties implicitly contemplated that the trial court retained the power to review whether a violation of the terms and conditions of that placement had occurred and decide the consequences for such a violation. Indeed, the State sought the trial court's review of the alleged violation of Rivera's placement. Without that ability to review potential violations and determine the consequences, there would be no recourse for non-compliant behavior. The trial court found that Rivera had technically violated the terms of his placement such that he was no longer a good candidate for that placement and determined that the consequence for the violation was a sentence of time served. Although other sanctions were available to the trial court, "ultimately it is the trial court's discretion as to what sanction to impose under the statute." Abernathy, 852 N.E.2d at 1022 (analyzing sanction for violation of conditions of probation).

The trial court's decision to sentence Rivera to time served was not a sentence modification, but a consequence of the violation of his initial sentence. See id. at 1021. Indiana Code section 35-38-2.6-3(a) provides that "[t]he court may, at the time of sentencing, suspend the sentence and order a person to be placed in a community corrections program as an alternative to commitment to the department of correction." Rivera's 545-day sentence was suspended when he was ordered placed in the community

corrections program. In the probation revocation context in <u>Stephens</u>, our Supreme Court held that "a trial court has the statutory authority to order executed time following revocation of probation that is less than the length of the sentence originally suspended, so long as, when combined with the executed time previously ordered, the total sentence is not less than the statutory minimum." 818 N.E.2d at 942. Although not explicitly doing so, the trial court, in effect, revoked Rivera's community corrections placement. The consequence for Rivera's violation was time served, which was less than the original sentence suspended by virtue of his placement in community corrections. More specifically, the trial court sentenced Rivera to time served, or 384 days, which was less than the length of the sentence originally suspended, 545 days, and when combined with the executed time previously ordered, 545 days, is not less than the statutory minimum for the offense, which in this case is six months. Accordingly, we find no abuse of discretion in the trial court's order.

In light of the foregoing, we affirm the trial court's decision.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.