## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 09 2018, 9:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

APPELLEE PRO SE

Alan Jenkins
Pendleton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Respondent,*

v.

Alan Jenkins,

*Appellee-Petitioner.*

February 9, 2018

Court of Appeals Case No.
41A04-1707-CR-1517

Appeal from the Johnson Superior Court

The Honorable Kevin M. Barton, Judge

Trial Court Cause No.
41D01-0402-FA-1

**Mathias, Judge.**

[1]     The State of Indiana appeals the order of the Johnson Superior Court granting a petition filed by Alan Jenkins ("Jenkins") seeking to modify his sentence. On

appeal, the State argues that the applicable sentence modification statute does not authorize a court to modify a sentence imposed pursuant to a fixed-sentence agreement without an express reservation of such authority in the agreement. We agree with the State and therefore reverse the order of the trial court and remand with instructions to impose the agreed-upon sentence.

## Facts and Procedural History

As we briefly set forth in Jenkins's direct appeal: "In the winter of 2002, Jenkins's sister . . . and her twelve-year-old daughter, G.P., moved in with Jenkins. Shortly thereafter, Jenkins and G.P. began engaging in sexual intercourse and oral sex that was often accompanied with drug and alcohol use." *Jenkins v. State*, No. 41A01-0502-CR-67, slip op. at 3 (Ind. Ct. App. June 28, 2005) ("*Jenkins I*"). A more detailed description was given in our decision affirming the trial court's partial denial of Jenkins's subsequent petition for post-conviction relief:

> In the winter of 2002, Jenkins's sister, S.P., and her twelve-year-old daughter, G.P., moved in with Jenkins. During the following two to three months, Jenkins's relationship with G.P. changed from an "uncle/niece relationship," to being friends, and then to a "boyfriend/girlfriend relationship." Jenkins and G.P., who was in sixth grade at the time, regularly engaged in sexual intercourse and oral sex, activities that were often accompanied by alcohol and drug use. G.P. would steal liquor and cigarettes from drugstores, and Jenkins would sometimes drive her to the stores. The two spent a great deal of time together, often because G.P. was skipping school. At some point, the two "started doing 'crack' together."

*Jenkins v. State*, No. 41A01-1502-PC-77, 2015 WL 5970434, slip op. at 2–3 (Ind. Ct. App. Oct. 14, 2015) ("*Jenkins II*") (citations omitted).

[3] Following a jury trial in May 2004, Jenkins was convicted of two counts of Class A felony child molesting and determined to be a habitual offender. *Id*. at 5. The jury acquitted Jenkins of another count of Class A felony child molesting and Class A felony contributing to the delinquency of a minor. *Id*. at 5–6. The trial court sentenced Jenkins to two terms of thirty-five years for the child molesting convictions and an additional thirty-year term for being a habitual offender, all to be served consecutively, for an aggregate sentence of 100 years.

[4] On direct appeal, Jenkins claimed only that his sentence was improper because the trial court, when imposing sentence, relied on facts that were not found by the jury, in violation of his Sixth Amendment rights as outlined in the then-recent case of *Blakely v. Washington*, 542 U.S. 296 (2004). We rejected Jenkins's *Blakely* claim, but we remanded with instructions that the trial court attach the habitual offender enhancement to one of the sentences imposed on the Class A felony convictions. *Jenkins I*, slip op. at 6.

[5] In 2006, Jenkins filed a petition for post-conviction relief claiming ineffective assistance of trial counsel and ineffective assistance of appellate counsel. After numerous continuances and other delays, the post-conviction court finally held evidentiary hearings on Jenkins's petition on November 28, 2012, May 29, 2013, and September 17, 2013. On February 6, 2015, the post-conviction court entered an order denying Jenkins's petition for the most part, but partially

granting relief on grounds that Jenkins's appellate counsel failed to inform him when the opinion of this court on direct appeal had been issued, thereby depriving Jenkins of the opportunity to seek transfer to the Indiana Supreme Court. The post-conviction court was of the opinion that there was a reasonable probability that our supreme court would have granted transfer and reduced Jenkins's sentence under Appellate Rule 7(B). *See* Appellant's App. p. 24. Accordingly, the post-conviction court determined that "the relief to which [Jenkins] is entitled for his Petition for Post-Conviction Relief is for correction of sentence. The issue is whether the aggregate sentence of one hundred (100) years executed is an appropriate sentence." *Id*. at 25. The court then ordered Jenkins to be re-sentenced after a new sentencing hearing.

[6]     At the May 17, 2016 re-sentencing hearing, the State indicated that it and Jenkins's counsel had reached an agreement as to what Jenkins's sentence should be. Jenkins's counsel confirmed this, stating, "[w]e do have a[n] agreed resolution as to what the appropriate sentence would have been at the time." Re-sentencing Tr. p. 4. Jenkins's counsel then continued:

> [Jenkins] was found guilty of Counts II and Counts III. In the original order those were to be run consecutively. Based on the agreement, those would . . . run concurrently and Count V which was the habitual offender enhancement which did attach to Count II by law is required to run consecutive, so aggregately his sentence would be 65 years[.]

*Id.* at 4–5. When asked by his counsel if this was his understanding, Jenkins indicated in the affirmative. The trial court then confirmed that Jenkins understood the agreement:

> Representation has been made by [the prosecutor] and [defense counsel] that they have entered into discussion and, with consultation with you, and it's my understanding that the result of that discussion is that . . . they have agreed to change one word in the Sentencing Order and I believe that one word would be that the sentences upon the two Counts would run then concurrent as opposed to consecutive. So the word change would be to change consecutive to concurrent. [T]hereby reducing the sentence from a total of one hundred years to sixty-five years. [I]s that your understanding of the agreement that you have entered into with the State of Indiana?

*Id.* at 8. Jenkins again responded in the affirmative. The trial court then questioned Jenkins and ensured that his agreement was his own free and voluntary act and that nothing else had been said or done to coerce him into entering into the agreement. The exchange between Jenkins and the court continued:

> THE COURT:     And do you understand that . . . if the sentence is then modified in accordance with that agreement effectively then the issue is then resolved and that is then the sentence that you will then, the final sentence so to speak?
>
> MR. JENKINS:   Yes, I understand that.
>
> THE COURT:     . . . [B]ut you understand that you have no obligation to accept that agreement and that if it is your desire you could ask that [defense counsel] proceed to re-sentencing today

MR. JENKINS:  I understand that.

THE COURT:    And you understand that if that were the case, then obviously I would listen to what you, what [defense counsel] would have to say, what, what you would have to say and what the State's contentions . . . , but in that event that decision would be mine and mine alone, you understand that?

MR. JENKINS:  Yes.

THE COURT:    *And you understand that to that extent the agreement then takes away that discretion from me and basically you are . . . then bound by the terms of that agreement?*

MR. JENKINS:  Yes.

THE COURT:    Ok. With that all being said, is that what you wish to do?

MR. JENKINS:  Yes sir.

*Id.* at 9–10 (emphasis added). The court then accepted the agreement and re-sentenced Jenkins according to the terms thereof, i.e., two concurrent terms of thirty-five years with a thirty-year habitual offender enhancement, for an aggregate term of sixty-five years.

[7]     On January 12, 2017, Jenkins filed a petition to modify his sentence. The State responded on April 17, 2017, objecting to Jenkins's petition, arguing that Jenkins's request required the approval of the prosecuting attorney and that Jenkins could not seek modification because he had entered into an agreement with the State regarding his sentence. The trial court held a hearing on Jenkins's petition on April 19, 2017, and on August 10, 2017, entered an order granting Jenkins's petition. In its order, the trial court reduced the concurrent sentences imposed on the Class A felony convictions from thirty to twenty years; the

habitual offender enhancement remained at thirty years. Thus, Jenkins's sentenced was reduced to an aggregate of fifty years. The State now appeals.[1]

## Standard of Review

The State argues that the trial court erred in granting Jenkins's petition to modify his sentence. Generally, a trial court's ruling on a defendant's petition to modify is subject to review only for an abuse of discretion. *Carr v. State*, 33 N.E.3d 358, 358 (Ind. Ct. App. 2015), *trans. denied*. Here, however, the State does not argue that the trial court abused its discretion in modifying Jenkins's sentence; it argues that the trial court lacked authority to modify Jenkins's sentence as a matter of law. Thus, the State claims that the trial court misinterpreted the sentence modification statute. Courts on appeal review issues of statutory interpretation de novo because they present questions of law. *See State v. Harper*, 8 N.E.3d 694, 696 (Ind. 2014) (because State claimed trial court lacked statutory authority to modify sentence as a matter of law, court's review was de novo).

Our goal in construing a statute is to determine, give effect to, and implement the intent of our General Assembly. *Alvey v. State*, 10 N.E.3d 1031, 1033 (Ind. Ct. App. 2014), *aff'd on reh'g*, 15 N.E.3d 72. To determine the intent of the legislature, we examine the statute as a whole and also read sections of an act together so that no part is rendered meaningless if it can be harmonized with

---

[1] The State has the authority to appeal the trial court's order. *See Hardley v. State*, 905 N.E.2d 399, 404 (Ind. 2009) (holding that the State has the authority to challenge erroneous sentences on appeal if "the issue is a pure question of law and does not require resort to evidence outside the appellate record.").

the remainder of the statute. *Id*. We presume that the legislature intended that the language used in the statute be applied logically and not to bring about an unjust or absurd result. *Id*. The best evidence of legislative intent is the language of the statute itself. *Id*. Thus, we must give all words their plain and ordinary meaning unless otherwise indicated by statute. *Id*. When the language in a statute is ambiguous or uncertain, we may look not only to the language, but also to the nature and subject matter of the act and the object to be accomplished thereby in ascertaining the legislative intent. *Id*. If, however, the statutory language is clear and unambiguous on its face, we will give such a statute its apparent and obvious meaning. *Id*.

## The Sentence Modification Statute

[10] A trial court generally has no authority over a defendant after sentencing unless such authority is conferred by statute. *State v. Harper*, 8 N.E.3d 694, 696 (Ind. 2014). One such statute is the sentence modification statute, which gives trial courts authority under certain circumstances to modify a sentence after it is imposed. The sentence modification statute,[2] with the most relevant parts emphasized, reads as follows:

---

[2] The applicable version of the statute is that in effect at the time the petition to modify was filed. *Moore v. State*, 30 N.E.3d 1241, 1245–46 (Ind. Ct. App. 2015).

(a) Notwithstanding IC 1-1-5.5-21,[3] this section applies to a person who:

> (1) commits an offense; or
> (2) is sentenced;

before July 1, 2014.

(b) This section does not apply to a credit restricted felon.

**(c) Except as provided in subsections (k) and (m), this section does not apply to a violent criminal.**

**(d) As used in this section, "violent criminal" means a person convicted of any of the following offenses:**

> \* \* \*

> **(10) Child molesting (IC 35-42-4-3).**[4]

> \* \* \*

(e) At any time after:

> (1) a convicted person begins serving the person's sentence; and
> (2) the court obtains a report from the department of correction concerning the convicted person's conduct while imprisoned;

---

[3] Indiana Code section 1-1-5.5-21, is a "savings clause," which provides that the provisions of the revised criminal code do not apply to the "penalties incurred," "crimes committed," or "proceedings begun," before the effective date of the revised code. The 2015 amendments to the sentence modification statute added this exception to the savings clause. *See* P.L. 164-2015 § 2.

[4] The full list of crimes set forth in this subsection includes; (1) murder; (2) attempted murder; (3) voluntary manslaughter; (4) involuntary manslaughter; (5) reckless homicide; (6) aggravated battery; (7) kidnapping; (8) rape; (9) criminal deviate conduct; (10) child molesting; (11) sexual misconduct with a minor as a Class A felony, Class B felony, Level 1 felony, or Level 2 felony; (12) robbery as a Class A felony, Class B felony, Level 1 felony, Level 2 felony, or Level 3 felony; (13) burglary as a Class A felony, Class B felony, Level 1 felony, Level 2 felony, Level 3 felony or Level 4 felony; and (14) unlawful possession of a firearm by a serious violent felon. Ind. Code § 35-38-1-17(d).

the court may reduce or suspend the sentence and impose a sentence that the court was authorized to impose at the time of sentencing. The court must incorporate its reasons in the record.

(f) If the court sets a hearing on a petition under this section, the court must give notice to the prosecuting attorney and the prosecuting attorney must give notice to the victim (as defined in IC 35-31.5-2-348) of the crime for which the convicted person is serving the sentence.

(g) The court may suspend a sentence for a felony under this section only if suspension is permitted under IC 35-50-2-2.2.

(h) The court may deny a request to suspend or reduce a sentence under this section without making written findings and conclusions.

(i) The court is not required to conduct a hearing before reducing or suspending a sentence under this section if:

> (1) the prosecuting attorney has filed with the court an agreement of the reduction or suspension of the sentence; and
> (2) the convicted person has filed with the court a waiver of the right to be present when the order to reduce or suspend the sentence is considered.

(j) This subsection applies only to a convicted person who is not a violent criminal. A convicted person who is not a violent criminal may file a petition for sentence modification under this section:

> (1) not more than one (1) time in any three hundred sixty-five (365) day period; and
> (2) a maximum of two (2) times during any consecutive period of incarceration;

without the consent of the prosecuting attorney.

**(k) This subsection applies to a convicted person who is a violent criminal. A convicted person who is a violent criminal may, not later than three hundred sixty-five (365) days from the date of sentencing, file one (1) petition for sentence modification under this section without the consent of the prosecuting attorney. After the elapse of the three hundred sixty-five (365) day period, a violent criminal may not file a petition for sentence modification without the consent of the prosecuting attorney.**

(l) A person may not waive the right to sentence modification under this section as part of a plea agreement. Any purported waiver of the right to sentence modification under this section in a plea agreement is invalid and unenforceable as against public policy. This subsection does not prohibit the finding of a waiver of the right to sentence modification for any other reason, including failure to comply with the provisions of this section.

**(m) Notwithstanding subsection (k), a person who commits an offense after June 30, 2014, and before May 15, 2015, may file one (1) petition for sentence modification without the consent of the prosecuting attorney, even if the person has previously filed a petition for sentence modification.**

Ind. Code § 35-38-1-17 ("Section 17") (emphases added).

# Discussion and Decision

Pursuant to the explicit language of Subsection 17(c), the sentence modification statute does not apply to violent criminals "[e]xcept as provided in subsections (k) and (m)." Subsection 17(k) provides in relevant part:

> A convicted person who is a violent criminal may, not later than three hundred sixty-five (365) days from the date of sentencing, file one (1) petition for sentence modification under this section

without the consent of the prosecuting attorney. After the elapse of the three hundred sixty-five (365) day period, a violent criminal may not file a petition for sentence modification without the consent of the prosecuting attorney.

And Subsection 17(m) provides:

(m) Notwithstanding subsection (k), a person who commits an offense after June 30, 2014, and before May 15, 2015, may file one (1) petition for sentence modification without the consent of the prosecuting attorney, even if the person has previously filed a petition for sentence modification.

These are the only portions of the sentence modification statute that are applicable to violent criminals. And Subsection 17(m) is inapplicable to Jenkins because he did not commit his offenses after June 30, 2014 and before May 15, 2015.

[12]    Accordingly, the only portion of the sentence modification statute that is directly applicable to Jenkins is Subsection 17(k). This subsection states that a violent criminal such as Jenkins may, within 365 days from the date of sentencing, file a petition for sentence modification without the consent of the prosecuting attorney. Here, the date of Jenkins's sentencing—or more accurately, re-sentencing—was May 17, 2016. Jenkins filed his petition for sentence modification on January 12, 2017, well within the 365-day limit. Thus, Jenkins was not required to obtain the consent of the prosecuting attorney before seeking sentence modification. The State does not argue to the contrary.

[13]     The State does, however, argue that the trial court could not modify Jenkins's sentence because, at his re-sentencing, Jenkins's counsel and the State entered into an agreement that Jenkins would receive an aggregate sentence of sixty-five years. In support of its claim, the State refers to the language of Subsection 17(e), which provides that the trial court may "reduce or suspend the sentence and impose a sentence *that the court was authorized to impose at the time of sentencing*." (emphasis added). The State contends that the trial court was only authorized at the time of sentencing to impose the sentence agreed by the parties, and therefore the trial court could not modify Jenkins's sentence to a lesser sentence. However, Subsection 17(e) is inapplicable because Jenkins is a violent criminal. Therefore, the trial court was not limited by the statutory language of Subsection 17(e) to impose only a sentence it was authorized to impose at sentencing.[5]

---

[5] Recently, in *State v. Lamaster*, 84 N.E.3d 630 (Ind. Ct. App. 2017), a panel of this court held that, under Section 17(e), the trial court could not modify the sentence of a defendant whose plea agreement called for a fixed sentence because "[a]t the time of sentencing, the trial court was authorized to impose the sentence provided for in the plea agreement." *Id*. at 634. After the opinion in *Lamaster* was issued, another panel of this court came to the opposite conclusion in *State v. Stafford*, 86 N.E.3d 190 (Ind. Ct. App. 2017), *trans. granted, opinion vacated*. The *Stafford* court held that the anti-waiver provisions of Subsection 17(l) meant that sentence modification was available even to a defendant whose plea agreement called for a fixed sentence. *Id*. at 193. The *Stafford* court further held that Subsection 17(e) did not limit the trial court's authority to modify, because "as to what sentence the trial court is 'authorized' to impose at the time of sentencing, that authorization is bound not only by the language of the plea agreement but also by the law," which includes the anti-waiver provisions of Subsection 17(l). As noted, however, our supreme court granted transfer in *Stafford*, thereby vacating that opinion. Although *Stafford* was vacated, another panel of this court recently came to the same conclusion. *See Rodriguez v. State*, No. 20A03-1704-CR-724, 2018 WL 360544, at *5 (Ind. Ct. App. Jan. 11, 2018). The State asks that we follow *Lamaster*. We, however, do not think that *Lamaster, Stafford, or Rodriquez* are controlling here, because they do not involve a defendant, like Jenkins, deemed to be a "violent criminal" by Subsection 17(d). Because Jenkins is a violent criminal, the anti-waiver provision of Subsection 17(l) is inapplicable.

[14]     But even before the language of Subsection 17(e) was added to the sentence modification statute, our courts had consistently held that a defendant who enters into a plea agreement that calls for a fixed sentence cannot later seek to modify his sentence under the sentence modification statute unless the plea agreement reserved to the court the right to modify.[6] *See Robinett v. State*, 798 N.E.2d 537, 540 (Ind. Ct. App. 2003) (citing *Pannarale v. State*, 638 N.E.2d 1247, 1248 (Ind. 1994)), *trans. denied*. These cases did not rely on the language of the sentence modification statute, but on the law governing plea agreements. As explained in *Pannarale*:

> [A]fter a sentence has been imposed pursuant to a plea agreement containing a recommendation of a specific term of years, that sentence may not be altered upon subsequent motion . . . unless the agreement contained a specific reservation of such authority for the trial judge.
>
> [*State ex rel. Goldsmith v. Superior Court*, 275 Ind. 545, 419 N.E.2d 109 (1981)] and its progeny each uphold the principle that a deal is a deal. *Once it has accepted a plea agreement, the sentencing court possesses only that degree of discretion provided in the plea agreement with regard to imposing an initial sentence or altering it later.*

---

[6] Of course, this is not the case if the plea agreement gave the trial court discretion in sentencing. As explained in *Pannarale v. State*, 638 N.E.2d 1247, 1248–49 (Ind. 1994)*:*

> While the trial court may not impose a sentence greater or lesser than that contained in the plea agreement, it does not lose any discretion it possessed at the time of initial sentencing when subsequent petitions for modification are presented. Rather, the court retains the authority to modify a sentence so long as the modified sentence would not have violated the plea agreement had it been the sentence originally imposed.

638 N.E.2d at 1248 (citing *Goldsmith*, 275 Ind. at 551–52, 419 N.E.2d at 114) (emphasis added); *accord Robinett,* 798 N.E.2d at 540; *see also Schippers v. State*, 622 N.E.2d 993, 995 (Ind. Ct. App. 1993) (holding that defendant who entered into plea agreement calling for a fixed term had received the benefit of his bargain and that to permit reduction or modification of his sentence would deprive the State of its end of the bargain).

[15]     Although this line of reasoning may have been altered by subsequent amendments to the sentence modification statute, such as the anti-waiver provision contained in Subsection 17(l),[7] that subsection is inapplicable to violent criminals such as Jenkins. Thus, the holdings of *Robinette* and *Pannarale* still control when it comes to modifying the sentences of those defined as "violent criminals" by the sentence modification statute.

[16]     Jenkins contends that he did *not* enter into a plea agreement calling for a specific term of years. He notes that the agreement mentioned by both his counsel and the State at the re-sentencing hearing was never reduced to writing before it was submitted to the trial court. Jenkins notes that Indiana Code section 35-35-3-3 requires that a prosecutor submit a plea agreement on a felony charge in writing to the trial court. *See Shepperson v. State,* 800 N.E.2d 658, 659 (Ind. Ct. App. 2003) (noting the statutory requirement that plea agreements involving felony charges be reduced to writing); *see also Petty v. State*, 532 N.E.2d 610, 612 (Ind. 1989) (holding that defendant's acceptance of oral plea

---

[7]     *See Rodriguez*, 2018 WL 360544, at *5.

offer from the State did not constitute a binding plea agreement), *overruled in part on other grounds by Whedon v. State*, 765 N.E.2d 1276 (Ind. 2002).

[17] However, in some situations, oral plea agreements are enforceable. For example, in *Shepperson*, the prosecution and the defendant reached an agreement whereby the defendant would plead guilty to one charge in each of two different causes and the remaining charges would be dropped; the parties also agreed to a two-year sentence. *Id.* at 659. Defense counsel informed the trial court of the terms of the oral agreement, and clarified that the sentences upon the two counts were to be served concurrently for an aggregate term of two years. The trial court accepted the plea, but at the subsequent sentencing hearing sentenced the defendant to a total of three years. On appeal, the defendant claimed that his sentence was in violation of the terms of his plea agreement. The State argued that the defendant's agreement was an unenforceable oral agreement. On appeal, we held that the oral agreement was enforceable once the trial court accepted it, and therefore remanded with instructions that the trial court re-sentence the defendant pursuant to the terms of the agreement. *Id.* at 660.

[18] The *Shepperson* court relied on *Rogers v. State*, 715 N.E.2d 428 (Ind. Ct. App. 1999), which came to the same conclusion. In *Rogers*, the terms of the plea agreement were presented to the court orally by defense counsel. Specifically, the defendant agreed to plead guilty to burglary and sexual battery, and sentencing was left to the discretion of the trial court with the exception that any sentences were to be served concurrently. The trial court accepted the plea,

but, at sentencing, ordered the sentences to be served consecutively. On appeal, we reversed, noting that the trial court had accepted the plea and was therefore bound by the terms of the agreement that the sentences be served concurrently. *Id*. at 428.

[19] These cases instruct us that although a plea agreement that has not been reduced to writing is not binding on the State vis-à-vis the defendant, once an oral agreement has been accepted by the trial court, it is binding on all parties, including the trial court. Thus, here, even though the agreement with regard to sentencing was never reduced to writing, it was presented by Jenkins's own counsel to the trial court, the State indicated its agreement with the presented terms, and the trial court accepted the terms. Indeed, when it accepted the agreement, the trial court warned Jenkins that the agreement "takes away [sentencing] discretion from me and basically you are . . . then bound by the terms of that agreement." Re-sentencing Tr. p. 10. Thus, the agreement was binding on all parties, including Jenkins.

[20] Here, Jenkins entered into an agreement with the State that specifically called for a fixed sentence, i.e., two concurrent terms of thirty-five years with a thirty-year habitual offender enhancement. Under the controlling precedent of *Pannarale* and its progeny, Jenkins cannot now seek to modify his sentence unless the agreement reserved to the court such a right to modify. *See* 638 N.E.2d at 1248; *Robinett*, 798 N.E.2d at 540. There is nothing in the record that would indicate that the terms of the agreement reached by the State and Jenkins included the reservation of such a right to the trial court. To the contrary, the

trial court informed Jenkins that, if it accepted the agreement, he would be bound by the terms thereof.

## Conclusion

In summary, the only provision of the sentence modification statute applicable to Jenkins is Subsection 17(k), because he is defined by the statute as a "violent criminal." As such, the anti-waiver provision contained in Subsection 17(l) is inapplicable. Moreover, Jenkins's oral agreement regarding sentencing was binding once it was accepted by the trial court. Because Jenkins entered into an agreement calling for a fixed sentence, he cannot now seek to modify his sentence. We therefore reverse the order of the trial court modifying Jenkins's sentence and remand with instructions to impose the sentence the parties agreed to, namely two concurrent thirty-five year sentences with a thirty-year habitual offender enhancement, for an aggregate term of sixty-five years.

Reversed and remanded.

Najam, J., and Barnes, J., concur.